2024-1342

# United States Court of Appeals
# for the Federal Circuit

MAGEMA TECHNOLOGY LLC,

*Plaintiff-Appellant,*

v.

PHILLIPS 66, PHILLIPS 66 CO., WRB REFINING LP,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Texas
No. 4:20-cv-02444, Judge Sim Lake

## DEFENDANTS-APPELLEES' RESPONSE BRIEF

Charles B. Walker, Jr.
Reagan Brown
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5203

Denise L. Drake, *Principal Attorney*
Charles M. Rosson
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
(713) 751-5232
ddrake@gibbsbruns.com

*Counsel for Defendants-Appellees*

May 22, 2024

# PATENT CLAIMS

This appeal involves Claims 1 and 5 of U.S. Patent No. 10,308,884

("the '884 Patent"). Claims 1 and 5 of the '884 Patent read as follows:

1. A low sulfur heavy marine fuel oil, consisting essentially of a 100% hydroprocessed high sulfur heavy marine fuel oil, wherein prior to hydroprocessing the high sulfur heavy marine fuel oil is compliant with ISO 8217: 2017 and is of merchantable quality as a residual marine fuel oil but has a sulfur content (ISO 14596 or ISO 8754) greater than 0.5% wt. and wherein the low sulfur heavy marine fuel oil is compliant with ISO 8217: 2017 and is of merchantable quality as a residual marine fuel oil and has a sulfur content (ISO 14596 or ISO 8754) less than 0.5 wt %.

5. A low sulfur hydrocarbon fuel composition consisting essentially of: a majority by volume of a 100 % hydroprocessed high sulfur residual marine fuel oil and a minority by volume of Diluent Materials, wherein prior to hydroprocessing the high sulfur heavy marine fuel oil is compliant with ISO 8217: 2017 but has a sulfur content (ISO 14596 or ISO8754 ) greater than 0.5 wt %; and wherein the low sulfur heavy marine fuel composition is compliant with ISO 8217:2017 and has a sulfur content (ISO 14596 or ISO 8754) less than 0.5 wt %; and wherein the Diluent Materials are selected from the group consisting of: hydrocarbon materials; non–hydrocarbon materials; and, solid materials and combinations thereof.

## <u>CERTIFICATE OF INTEREST</u>

Pursuant to Fed. Cir. R. 47.4(a), counsel for Defendants-Appellees certify the following:

1.     The names of the parties I represent are Phillips 66, Phillips 66 Co., and WRB Refining LP.

2.     There are no real parties in interest that I represent in this case.

3.     The parent corporation and stockholder for Phillips 66 Co. is Phillips 66. The parent corporation and stockholder for WRB Refining LP is Phillips 66 and Cenovus Energy Inc. The parent corporation and stockholder for Phillips 66 is not applicable.

4.     The legal representatives for the parties are the following:

GIBBS & BRUNS LLP: Denise Lambert Drake, Charles McCullough Rosson

NORTON ROSE FULBRIGHT US LLP: Charles B. Walker, Jr., Reagan M. Brown, Brandy S. Nolan, Mark Eberhard

PORTER HEDGES LLP: Stephen H. Lee, Joseph D. Cohen, Sarah J. Ring

WINSTEAD PC: Miranda Y. Jones (formerly of Porter Hedges LLP), Michael D. Karson, Jamie H. McDole

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP: John R. Keville, Robert L. Green

5.    There are no Fed. Cir. R. 47.5(a) related cases.

6.    There are no Fed. Cir. R. 47.4(a)(6) Organizational Victims

and Bankruptcy Cases.

*/s/ Denise L. Drake*
Denise L. Drake
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
(713) 751-5232
ddrake@gibbsbruns.com

*Principal Attorney for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

PATENT CLAIMS ................................................................. i

CERTIFICATE OF INTEREST ............................................ ii

TABLE OF AUTHORITIES ............................................... vii

STATEMENT OF RELATED CASES ................................. xii

ISSUES PRESENTED ...................................................... xiii

FACTS ............................................................................... 1

I.    Magema Did Not Solve The International Maritime Organization Sulfur Problem; Phillips 66 Did. ............................ 1

II.   Before Trial, Magema Obtained A Favorable Claim Construction And Excluded Important Evidence......................... 4

III.  The Jury Unanimously Found Phillips 66 Did Not Infringe. ...... 8

SUMMARY OF ARGUMENT ............................................ 12

STANDARDS OF REVIEW .............................................. 15

ARGUMENT ..................................................................... 17

I.    The Argument That Claims Require "Actual Testing" Cannot Warrant A New Trial. ............................................. 17

      A.   Magema's Challenges Cannot Survive Plain-Error Review. ........................................................ 18

           1.   Because Magema Forfeited Its Objections, Plain-Error Review Applies. ............................... 19

           2.   There Is No Plain Error. .......................... 26

B.    The District Court's Denial of Magema's Motion For
New Trial Cannot Be Reversed Because Magema Does
Not Challenge Its Holding And Because That Holding
Does Not Contain Reversible Error. .................................. 30

1.    By Failing To Contest The District Court's
Manifest Injustice Determination, Magema Fails
To Allege An Error Susceptible To Reversal. ........... 30

2.    Even If This Court Reaches The District Court's
Subsidiary    Harmless-Error    Analysis,    That
Analysis Contains No Reversible Error Because
Magema's Substantial Rights Were Unimpaired..... 35

II.    Magema's Second Issue Fails To Raise A Preserved Or Valid
*O2 Micro* Challenge.................................................... 42

A.    Magema Failed To Preserve This Issue For Appeal
Because The Challenge Magema Raised Below Is
Fundamentally Different From The One It Raises Here.
........................................................................ 43

B.    Magema Waived Its *O2 Micro* Argument By Failing To
Request A Claim Construction On Either Of Its
Challenged Terms. ........................................... 46

1.    "Compliant with ISO 8217:2017.".............................. 54

2.    "Prior to Hydroprocessing." ...................................... 56

C.    Magema Fails To Show An *O2 Micro* Problem On The
Merits. .............................................................. 58

III.    The District Court's Erroneous Claim Construction In
Magema's Favor And Refusal To Further Construe Claim
Terms Provide An Alternative Grounds For Affirmance. .......... 63

A. The District Court Adopted Magema's Erroneous Construction Of A Key Claim Term And Wrongly Refused To Construe It Further. ........................................ 64

B. The District Court's Claim Construction Error Defeats Any Remand Because No Factfinder Could Have Found Infringement Had "HMFO" Been Properly Construed. .... 71

IV. The District Court's Erroneous Exclusion Of Actual Flashpoint Data Provides An Alternative Grounds For Affirmance. ................................................................... 74

CONCLUSION ....................................................................... 77

CERTIFICATE OF COMPLIANCE ..................................................... 78

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abner v. Kansas City Southern R. Co.*,
  513 F.3d 154 (5th Cir. 2008).............................................................. 41

*Arizona v. California*,
  460 U.S. 605 (1983).................................................................... 27

*Avid Technology, Inc. v. Harmonic, Inc.*,
  812 F.3d 1040 (Fed. Cir. 2016) ........................................................ 36

*Broadcom Corp. v. Qualcomm Inc.*,
  543 F.3d 683 (Fed. Cir. 2008) ................................................ 46, 47, 51

*Clapper v. American Realty Invs., Inc.*,
  95 F.4th 309 (5th Cir. 2024) ....................................................... 28, 29

*In re Deepwater Horizon*,
  785 F.3d 986 (5th Cir. 2015)............................................................ 16

*In re: Deepwater Horizon*,
  824 F.3d 571 (5th Cir. 2016)........................................................... 27

*E.E.O.C. v. Manville Sales Corp.*,
  27 F.3d 1089 (5th Cir. 1994)...................................................... 17, 76

*Echeverry v. Jazz Casino Co., L.L.C.*,
  988 F.3d 221 (5th Cir. 2021).......................................................... 39

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004) ................................................... 46, 47

*Eon Corp. IP Holdings v. Silver Spring Networks*,
  815 F.3d 1314 (Fed. Cir. 2016) ................................................... 60, 63

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012) ........................................................ 59

*Foradori v. Harris,*
    523 F.3d 477 (5th Cir. 2008) ............................................................. 38

*Freshub, Inc. v. Amazon.com, Inc.,*
    93 F.4th 1244 (Fed. Cir. 2024) ........................................................ 20

*Garcia-Ascanio v. Spring Indep. Sch. Dist.,*
    74 F.4th 305 (5th Cir. 2023) ............................................................ 26

*Garriott v. NCsoft Corp.,*
    661 F.3d 243 (5th Cir. 2011) ........................................................... 28

*GPNE Corp. v. Apple Inc.,*
    830 F.3d 1365 (Fed. Cir. 2016) ....................................................... 61

*Hall v. Freese,*
    735 F.2d 956 (5th Cir. 1984) ..................................................... 33, 34

*Harris v. FedEx Corp. Serv.,*
    92 F.4th 286 (5th Cir. 2024) ........................................................... 39

*Highlands Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
    27 F.3d 1027 (5th Cir. 1994) ........................................................... 26

*Hinojosa v. Butler,*
    547 F.3d 285 (5th Cir. 2008) ........................................................... 36

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.,*
    628 F.3d 1359 (Fed. Cir. 2010) ............................................. *passim*

*Learmonth v. Sears, Roebuck and Co.,*
    631 F.3d 724 (5th Cir. 2011) ..................................................... 15, 32

*Lexion Med., LLC v. Northgate Techs., Inc.,*
    641 F.3d 1352 (Fed. Cir. 2011) ....................................................... 16

*LifeNet Health v. LifeCell Corp.,*
    837 F.3d 1316 (Fed. Cir. 2016) ............................................. *passim*

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.,*
    790 F.3d 1329 (Fed. Cir. 2015) ....................................................... 49

*Lindsey v. Prive Corp.*,
  161 F.3d 886 (5th Cir. 1998) ............................................................ 39

*Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*,
  903 F.3d 435 (5th Cir. 2018) ............................................................ 16

*Mid-Continent Cas. Co. v. Bay Rock Operating Co.*,
  614 F.3d 105 (5th Cir. 2010) ............................................................ 73

*Mills v. Beech Aircraft Corp.*,
  886 F.2d 758 (5th Cir. 1989) ............................................................ 32

*Muth v. Ford Motor Co.*,
  461 F.3d 557 (5th Cir. 2006) ............................................................ 37

*Netword, LLC v. Centraal Corp.*,
  242 F.3d 1347 (Fed. Cir. 2001) ........................................................ 69

*Network–1 Techs., Inc. v. Hewlett–Packard Co.*,
  981 F.3d 1015 (Fed. Cir. 2020) ........................................................ 37

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) .................................................................... 27, 55

*Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*,
  848 F.2d 613 (5th Cir. 1988) ............................................................ 24

*O'Rear v. Fruehauf Corp.*,
  554 F.2d 1304 (5th Cir. 1977) .......................................................... 32

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ................................................. *passim*

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................... 68, 69

*Ramsey v. Pepsi Cola Bottling Co.*,
  265 Fed. Appx. 272 (5th Cir. 2008) ............................................. 16, 18

*Reese v. Mercury Marine Div. of Brunswick Corp.*,
  793 F.2d 1416 (5th Cir. 1986) .......................................................... 19

*Smith v. Transworld Drilling Co.,*
    773 F.2d 610 (5th Cir. 1985) ........................................................ 31, 32

*SmithKline Beecham Corp. v. Apotex Corp.,*
    439 F.3d 1312 (Fed. Cir. 2006) ................................................... 42, 55

*Teva Pharms. USA, Inc. v. Sandoz, Inc.,*
    574 U.S. 318 (2015) ............................................................................ 16

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs.
    Am., Inc.,*
    895 F.3d 1304 (Fed. Cir. 2018) ................................................... 38, 39

*Union Pump Co. v. Centrifugal Tech. Inc.,*
    404 Fed. Appx. 899 (5th Cir. 2010) .................................................. 40

*United States v. Achobe,*
    560 F.3d 259 (5th Cir. 2008) ............................................................. 40

*United States v. Davis,*
    443 F.2d 560 (5th Cir. 1971) ............................................................. 21

*United States v. El-Mezain,*
    664 F.3d 467 (5th Cir. 2011) ....................................................... 38, 40

*United States v. Frady,*
    456 U.S. 152 (1982) ........................................................................... 27

*United States v. Pettigrew,*
    77 F.3d 1500 (5th Cir. 1996) ....................................................... 19, 23

*Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.,*
    602 F.3d 1325 (Fed. Cir. 2010) ......................................................... 61

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ........................................................... 68

*Waterman v. McKinney Indep. Sch. Dist.,*
    642 Fed. Appx. 363 (5th Cir. 2016) .................................................. 35

*Whitehead v. Food Max of Miss., Inc.,*
    163 F.3d 265 (5th Cir. 1998) ............................................................. 32

*Winter v. Brenner Tank, Inc.*,
  926 F.2d 468 (5th Cir. 1991)................................................................ 40

*Zafiro v. United States*,
  506 U.S. 534 (1993)....................................................................... 41

## Other Authorities

FED. R. CIV. P. 61 ................................................................... 31, 35

FED. R. EVID. 103(a).................................................................. 21, 23

FED. R. EVID. 103(b)................................................................. 20, 24

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, counsel for Defendants-Appellees Phillips 66, Phillips 66 Co., WRB Refining LP ("Phillips 66") states that there are no other appeals from the case below to this Court or any other appellate court. There are no cases known to counsel for Phillips 66 pending in this Court or any other court that will directly affect, or be directly affected by, this Court's decision in this case.

## ISSUES PRESENTED

1. In the Fifth Circuit, a district court must order a new trial if manifest injustice occurred. While evaluating the entire record, the district court noted an argument was improper because of a discovery dispute but did not affect the verdict because Magema's case failed multiple times over. Having failed to preserve error, can Magema force a new trial by challenging only this fragment of the district court's reasoning?

2. Under *O2 Micro*, parties must raise claim-scope disputes to the district court. Magema did not request claim construction on whether and where the patents require feedstock testing, instead requesting the jury determine those issues under the plain meaning of the patent terms. Can Magema show a preserved or valid *O2 Micro* challenge here?

3. In construing the term "Heavy Marine Fuel Oil," the district court determined that the term's two different claimed characteristics— a "residual fuel" and "compliant with ISO 8217:2017"—were synonymous, thus disregarding the specification's "residual fuel"

definition. Does the court's error in Magema's favor provide an alternative ground for affirmance?

4. Phillips 66 produced feedstock test results that conclusively negated Magema's infringement theory as to the Bayway refinery by showing that feedstock flashpoints were too low to infringe. The district court refused to consider the test results at summary judgment and excluded them from trial. Does the court's error in Magema's favor provide an alternative ground for affirmance?

## FACTS

### I.   Magema Did Not Solve The International Maritime Organization Sulfur Problem; Phillips 66 Did.

Phillips 66 has reduced sulfur levels in fuels produced at its refineries for decades.[1] For years the company has blended, hydrotreated, and otherwise modified fuel inputs in "extremely innovative" ways to achieve desired outputs.[2] So when the International Maritime Organization ("IMO") announced in 2016 that the maximum permitted sulfur content of heavy marine fuel oil ("HMFO") would decrease by 2020,[3] Phillips 66 prepared to adapt again. It optimized processes at its Bayway and Wood River refineries to reduce the sulfur content of its HMFO products, thus producing refined fuel products compliant with the IMO's standards.[4]

In 2016, an individual who had "never designed a hydrotreater" and had "never been involved in buying or selling marine fuel oil" or "the patent process" heard about the IMO's sulfur announcement and

---

[1] Appx1023-24 (240:4-241:21).

[2] Appx0929 (40:2-14); Appx1024 (241:4-21).

[3] Appx1024-25 (241:22-242:23, 247:1-19).

[4] *E.g.*, Appx0913 (222:19-23) (Bayway); Appx0915 (230:2-10) (Wood River).

1

partnered with an unemployed friend who "had never worked with marine fuel oils" to "design and build a production plant that was going to hydrotreat high-sulfur heavy marine fuel oil into very low-sulfur marine fuel oil."[5] They formed Magema, came up with a way to reduce sulfur content in HMFOs, and applied to patent their process.[6] But the market proved Magema's patented process to be wildly unpopular: no one in the geography covered by Magema's patents has ever used it.[7] Magema failed to apprehend that because the refining industry has navigated changes to sulfur-content specifications successfully for decades, its patents teach a solution in search of a problem.

Phillips 66 and Magema have never been partners. Through a family connection, Magema marketed its idea to Phillips 66.[8] Phillips 66 learned that Magema wanted to "build, own and operate" a "hydrotreater somewhere on the Gulf Coast."[9] Magema wanted Phillips 66 to ship fuel across the country to this nonexistent desulfurizing plant, at the

---

[5] Appx0877 (79:19-80:18), Appx0860 (10:10-18), Appx0861 (14:24-15:2).

[6] Appx0862 (20:2-11), Appx0868 (43:13-21).

[7] Appx0880 (89:7-9).

[8] Appx0868 (44:10-23).

[9] Appx0916 (235:3-8).

uneconomical cost of $2.5 million per month.[10] And it wanted Phillips 66 to use fuel and refinery technology that differed from what Phillips 66 had in place.[11] Phillips 66's director of hydroprocessing[12] concluded that Magema's proposed technology "was not feasible."[13]

Phillips 66 did not want Magema's technology. No one did. Through trial, Magema had never made a dollar on its technology.[14] Phillips 66 solved the sulfur cap problem using methods that have existed for decades, and in a way that had "nothing to do with" Magema.[15] In fact, the twists Phillips 66 introduced to its existing processes to meet the cap originated in-house and before any meetings with Magema happened.[16] Magema sued anyway, claiming Phillips 66's refineries at Wood River and Bayway infringed Magema's patents.[17]

---

[10] Appx1037 (83:2-84:16).

[11] Appx0912 (217:20-218:6), Appx1038 (85:5-17).

[12] Appx0906 (193:15-22).

[13] Appx0904 (185:11-15).

[14] Appx0951 (125:7-126:11).

[15] Appx0917 (239:15-19).

[16] Appx0126.

[17] Appx0085.

## II.  Before Trial, Magema Obtained A Favorable Claim Construction And Excluded Important Evidence.

The district court recognized that "the lion's share of [its] rulings have been favorable to the plaintiffs . . . ."[18] It was thus Phillips 66, and not Magema, that began the trial with "hands tied behind its back"[19]—so much so that Phillips 66 was barred from presenting two independently dispositive bases for noninfringement to the jury.

First, Magema prevailed in full in the claim construction process. There, the parties asked the court to construe three terms, including "HMFO," the only one at issue here.[20] The court adopted Magema's proposed construction that "HMFO" is "a petroleum product fuel compliant with the ISO 8217:2017 standards for the bulk properties of residual marine fuels except for the concentration levels of the Environmental Contaminates."[21] The court rejected Phillips 66's argument that the HMFO definition must include the specifications' limitation that HMFO contain "process residues," the "fractions that

---

[18] Appx1092 (15:2-5).

[19] *Contra* Magema Opening Br. ("Br.") 23.

[20] Appx0231.

[21] Appx0239.

don't boil or vaporize even under vacuum conditions."[22] Phillips 66 reurged its claim construction request at summary judgment, arguing that the claim construction "does not address the dispute between the parties" whether HMFO must contain *any* process residues, leaving "a continuing obligation to address [that] dispute[]" under *O2 Micro*.[23] But the court refused to change its construction or construe "HMFO" further—through summary judgment;[24] the jury instruction stage;[25] and the JMOL stage.[26] The impact was striking: because Bayway processes only distillate fuels that have been fully vaporized before they ever reach the hydrotreater, reading out the requirement that HMFO contain "fractions that don't boil or vaporize" erased a dispositive ground for noninfringment.[27]

Second, pre-trial rulings concerning feedstock testing favored Magema.[28] Before those rulings, Phillips 66 produced many "fresh feed"

---

[22] Appx0238.

[23] Appx1906; Appx1857-58; Appx0055.

[24] Appx0060.

[25] Appx0672.

[26] Appx1122.

[27] Appx0054.

[28] *Contra* Br. 21.

samples from its Bayway facility.[29] These samples came from outside the battery limits of the facility (before the feedstock hit any equipment), because that was the area both parties considered relevant to flashpoint.[30] Flashpoint was an important parameter because the parties agree Phillips 66 does not infringe at Bayway if the flashpoint of the Bayway feed is less than 140 degrees Fahrenheit.[31]

The samples and testing results showed non-infringement. Aside from stray readings, they reported a flashpoint below 140 degrees—often significantly below.[32]

So Magema changed course. After serving expert reports, Magema moved to compel feedstock samples from new locations *inside* Bayway's battery limits, which would require imposing new safety protocols and building additional infrastructure.[33] Magema already had samples from Bayway's two feedstock streams: the "fresh stream"; and the "recycled stream," consisting of the finished product recycled into the facility as

---

[29] Appx1977; *see also* Appx1009 (112:3-5).

[30] *See* Appx1978.

[31] *E.g.*, Appx0016.

[32] Appx1853.

[33] Appx1978-79.

feedstock.[34] So when Magema demanded samples of the combined (fresh plus recycled) stream, Phillips 66 specified that the properties of the combined stream could be determined from the known properties of the two constituent streams—data that was already available to both parties.[35] The district court declined to compel these samples.[36]

Magema wielded this denial as a sword. When its motion to compel was denied, Magema had not clearly contended that equipment within the Bayway facility materially changed flashpoint, such that testing feedstock at locations within the battery limits and downstream from the "fresh feed" would be fundamentally different than testing the fresh feed itself.[37] After the motion's denial, though, Magema offered theories that a D-101 drum downstream of the fresh-feed samples could change the feed's flashpoint, and that the flashpoint of this altered feed could be estimated using "Riazi" calculations.[38]

Since Magema thereby injected a new issue about whether the fresh

---

[34] Appx1976.

[35] Appx0273 (13-15, 21-24).

[36] Appx0007.

[37] Appx1978 (quoting expert testimony).

[38] Appx1978-79; Appx0063 (describing Riazi approach).

feed's flashpoint changed as it flowed through equipment, Phillips 66 undertook the burden to build downstream sampling stations where Magema theorized the flashpoint could become higher.[39] These samples proved Magema wrong; the flashpoint had not increased.[40] But after it saw the testing results, Magema successfully excluded these downstream feedstock samples—the very ones it had moved to compel—as untimely disclosed.[41]

## III.    The Jury Unanimously Found Phillips 66 Did Not Infringe.

Magema's trial evidence fell flat on predicate issues long before flashpoints. First, Magema failed to address that the Bayway feed could not satisfy the claims' independent requirement of "merchantability."[42] "Defendants presented undisputed evidence that the Bayway feed was not merchantable because its viscosity was too low[.]"[43] Phillips 66's manager of commercial fuel trading explained the viscosity problem in

---

[39] Appx1979.

[40] Appx1979.

[41] Appx0032.

[42] Appx0112; Appx0147.

[43] Appx0112.

detail.[44] Magema had no answer then or now, except to complain that it was ambushed, to press the merchantability of the product rather than the feed, and to reference evidence concerning not merchantability but IMO specifications (a separate issue).[45] But the district court recognized Phillips 66 timely disclosed its viscosity contention and that whether the feedstock and product are merchantable are different questions.[46]

Second, evidence on where to measure flashpoint—at the "fresh feed" point, or after the feed hits the equipment—was dispositive in Phillips 66's favor. Magema's expert took Phillips 66's side that what mattered was the flashpoint of the fresh feed.[47] Phillips 66's witnesses agreed.[48] That disposed of whether the Riazi estimates were appropriate, since those estimates do not purport to measure the fresh feed samples.[49]

These failures (and others) rendered irrelevant whether Riazi estimates were a sufficient substitute for actual tests. The district court

---

[44] Appx0101.

[45] Br. 45.

[46] Appx0101.

[47] Appx0105.

[48] *E.g.*, Appx0928 (34:19-22); Appx1045-46 (116:7-117:17).

[49] Appx0991 (40:1-4), Appx0992 (44:11-13).

recognized the contest was not close.[50]

Throughout trial, Magema chose not to object contemporaneously to whether the claims required actual testing or permitted the use of Riazi estimates. Small wonder: Magema had prevailed in virtually all significant pretrial matters, including claim construction and evidence exclusion.[51] The parties also provided the jury with notebooks containing ISO 8217, which indicates the actual testing requirement.[52] And Magema knew Phillips 66 never conceded that Magema could prove its case without test results.[53] The "estimates" Phillips 66 described at a motion to compel hearing concerned composites of two actual feedstock tests or samples, where the properties of both feedstocks were empirically knowable—not Riazi estimates of flashpoint at a point where no samples existed.[54]

So rather than objecting, Magema *highlighted* the actual-testing issue, using it as a strategic cudgel to paint Phillips 66 as a willful

---

[50] Appx0112-13.

[51] Appx0238-39; Appx0032.

[52] Appx0575; Appx2051, Appx2054; *accord* Appx0894 (146:10-13).

[53] *E.g.*, Appx1848 (challenging Riazi); Appx0957 (150:11-12).

[54] Appx0272-73.

infringer. Magema affirmatively elicited testimony about the actual-testing issue, insisting witnesses confirm that "Phillips 66 has an argument in this case . . . that Magema has an obligation to provide actual testing of physical samples in order to satisfy ISO 8217."[55] Magema even offered the misimpression that Phillips 66 never provided the very samples Magema had excluded:

> Q. But you can't test a sample that hasn't been provided to you, right? Is that fair?
>
> Q. So Phillips gave us samples of products that aren't representative of what's going into the reactor and then Phillips is saying, well, Magema you have to test the actual properties and so we only gave you these samples and so we're stuck with this, correct?
>
> Q. We're going to give you the orange stream, the green stream, and we're not going to give you anything else, correct? But then Phillips 66 said that we have to provide actual test data; is that correct? Is that the position?[56]

And if there was ever confusion whether estimates could satisfy Magema's burden of proof, Magema dispelled it. Magema told the jury

---

[55] Appx0907 (199:11–19).

[56] Appx0907 (200:1-2); Appx0928 (34:1-5); Appx0928 (34:15-18).

that "we were allowed to use calculations under these circumstances."[57]

No party moved for mistrial. The parties put the case in the hands of the jury, which returned a unanimous verdict of non-infringement.[58] Its verdict could not have turned on whether actual testing was required instead of Riazi estimates, because that issue affected only one of the two refineries at issue (Bayway).[59] The jury found non-infringement as to both.[60]

Magema filed a motion for new trial containing a slew of complaints it had never raised before.[61] The district court denied Magema's motion,[62] and this appeal followed.

## SUMMARY OF ARGUMENT

Going into trial, Magema was riding high. Having gotten nearly everything it asked for in pretrial motions, Magema unsurprisingly chose to gamble on the verdict, lodging virtually no contemporaneous trial

---

[57] Appx2040 (79:23-80:8).

[58] Appx0079-81.

[59] Appx0991 (40:1-4).

[60] Appx0080-81.

[61] Appx2087-2119.

[62] Appx0085-86.

objections (and none to the issues raised here), let alone hinting at a mistrial. But when the tables turned to testing the merits, the jury unanimously found that Phillips 66 had never infringed any of Magema's patents.

So Magema now changes its tune, lamenting a "runaway trial" conducted by a judge who "frankly didn't understand" and must have seen errors occur yet "unjustifiably" "refused to curtail Phillips' improper behavior" and again and "again did nothing to correct the" errors (that Magema never asked him to correct).

Magema's revisionist history is subject to its gambits below. As to its first Issue Presented, Magema's failure to preserve error subjects it to plain-error review, where reversal is warranted only for exceptional errors. But Magema fails to explain how it meets the plain-error elements, nor could it—this case is nothing like the rare cases meriting plain-error reversal. Worse, by challenging only a subsidiary harmless-error finding and not the manifest injustice holding subject to the standard of review, Magema fails to allege any error susceptible to reversal. Those failures are an impenetrable wall, but nothing useful for Magema lies on its other side—the court's harmless-error analysis stands

because Magema's substantial rights were unimpaired and the jury's verdict was amply supported.

Magema's trial strategy haunts its second issue too. The complaint it raises in *O2 Micro* guise here was raised to the district court solely as an improper-argument-of-counsel basis for a new trial, thus failing to preserve its challenge. Moreover, Magema never contended below—even post-trial—that either of the terms were wanting of further construction, instead conceding to the judge and jury that their plain meanings were subject to the crucible of evidence (where Magema was happy to do battle, until it lost). Magema thus waived any *O2 Micro* challenge and triggered no claim construction duty. Even on those waived merits, Magema challenges the actions of the wrong actor and complains of factual questions relating to infringement rather than proper claim construction questions.

Magema's two affirmative issues end its appeal. But two alternative grounds for affirmance wait in the wings. Issue three shows how the court erred in construing in Magema's favor the key claim term "HMFO." It did so by adopting solely a descriptive feature of that term while failing to include its inherent definition. Because the evidence is

14

undisputed that Bayway does not infringe had that definition been included, this error is a determinative basis for affirmance.

Issue four similarly shows how the court's error in excluding evidence of actual flashpoint data changed the course of the trial. It was conducted on *estimates* supporting Magema's only theory of Bayway infringement while the *actual data* showing those estimates to be a sham—thereby proving Bayway's noninfringment—were excluded. Instead, the trial should have ended before it began: at summary judgment, which the district court denied not on any evidentiary basis but solely on the flashpoint data's timing. That cannot survive scrutiny here.

## STANDARDS OF REVIEW

For Issue One, "[a] new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand. [The Court of Appeals] will reverse the trial court's denial of a motion for a new trial only when there is a clear showing of an abuse of discretion." *Learmonth v. Sears, Roebuck and Co.*, 631 F.3d 724, 731 (5th Cir. 2011) (citations and quotations omitted). When the appellant fails to preserve error in the

trial court, plain-error review applies in lieu of the abuse-of-discretion standard. *Ramsey v. Pepsi Cola Bottling Co.*, 265 Fed. Appx. 272, 275 (5th Cir. 2008).

For Issue Two, *O2 Micro* error arises when a district court fails to issue a claim construction on "an actual dispute regarding the proper scope of [the] claims" that has been properly raised by the parties. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

For Issue Three, legal conclusions within the district court's claim construction are reviewed *de novo*. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 322, 332-33 (2015). Under Fifth Circuit law, this Court "review[s] grants and denials of summary judgment *de novo*," especially with respect to "legal conclusions." *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 444 (5th Cir. 2018); *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011) (regional law applies). Even under an abuse-of-discretion standard, "an error of law constitutes an abuse of discretion." *In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015).

For Issue Four, decisions to exclude evidence are reviewed for abuse

of discretion, "but competent evidence cannot be excluded without a sound and acceptable reason." *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1092–93 (5th Cir. 1994).

## ARGUMENT

### I. The Argument That Claims Require "Actual Testing" Cannot Warrant A New Trial.

Magema claims "improper and prejudicial" arguments concerning the "actual testing" of feedstock caused a "runaway trial."[63] Trials rarely "run away." If this one had, then when it started running Magema would have sought a mistrial or at least lodged timely objections. There would be procedural signs something went awry—signs that make way for "true appellate review."[64] Instead there are none. Magema's challenges came to life only post-trial. As a result, there is no preserved error, so the plain-error standard applies—and Magema meets none of its elements.

Magema's first issue fails even if the plain-error standard does not apply. Magema chips at the district court's sub-determination that "actual testing" arguments did not affect the outcome of the trial.[65] But

---

[63] Br. 4-5, 39-53.

[64] Br. 6.

[65] Br. 40-42.

that portion of the court's order was not integral to its holding that there was no "manifest injustice" warranting a new trial, meaning the denial will stand even if Magema is right. And Magema is not: The district court did not clearly abuse its discretion in determining that the arguments Magema challenges here did not affect the outcome of the trial.

### A.    Magema's Challenges Cannot Survive Plain-Error Review.

"Though [the Court] normally review[s] for abuse of discretion the decision not to grant a new trial," review here is only "for plain error because [Magema] failed to object." *E.g.*, *Ramsey v. Pepsi Cola Bottling Co.*, 265 Fed. Appx. 272, 275 (5th Cir. 2008). Magema invites review under the lower harmless-error standard,[66] but its bombastic language is revealing: it complains of a "plain error," a "runaway trial," a "miscarriage of justice," and a trial court that "deserves no deference,"[67] assertions that run only to the plain-error standard. Magema meets none of the plain-error elements, so it cannot obtain a new trial under Issue One.

---

[66] *E.g.,* Br. 40.

[67] Br. 4-6.

### 1.     Because Magema Forfeited Its Objections, Plain-Error Review Applies.

Because Magema "failed to object at trial to [an] allegedly improper argument, [] this Court may reverse only if it finds 'plain error.'" *Reese v. Mercury Marine Div. of Brunswick Corp.*, 793 F.2d 1416, 1429 (5th Cir. 1986). Likewise, because Magema did not object at the time testimony was offered, "admission of the[] statements is reviewable only for plain error." *United States v. Pettigrew*, 77 F.3d 1500, 1516 (5th Cir. 1996).

This failure to preserve error is apparent from the beginning of the trial to the end. First, Magema did not preserve error in the pretrial proceedings. Contrary to its contention here, Magema did not "object[] to Phillips' argument that the claims require actual testing" "[b]efore jury selection even began."[68] Complaining of a demonstrative slide, Magema previewed that if Phillips 66 were to raise an "actual testing" argument, Magema would re-urge an unrelated motion: "[T]o the extent that they can make this argument during trial, we would reurge our 295 motion to shift the burden of proof."[69] It never asked the court to exclude

---

[68] Br. 25.

[69] Appx0846 (7:10-13).

anything.[70]

A pretrial objection would have been insufficient to preserve error anyway, because the district court did not "rule[] definitively on the record." FED. R. EVID. 103(b). All the court did was permit Magema to object or re-urge a motion during trial: "I'm not going to exclude this during opening statement. *If you want to urge* the – if he offers evidence about this, I'll hear it during trial. But *at this preliminary stage,* I'm not going to prohibit him referring to it in opening argument."[71]

Thus, "[t]he pretrial ruling did not foreclose consideration at trial" of whether any arguments were "running afoul of the evidentiary standards." *Freshub, Inc. v. Amazon.com, Inc.*, 93 F.4th 1244, 1251 (Fed. Cir. 2024) (applying Fifth Circuit law). Because "Fifth Circuit authority indicates that it is broadly up to the litigant seeing prejudice to object in a timely fashion to identify such uses, so they may be evaluated in the context of the unfolding evidence and argument, and prevented or corrected," Magema had to object at trial to preserve error. *Id.* But Magema never objected "in a timely fashion" during trial. *Id.*; *see also*

---

[70] *Id.*

[71] Appx0846 (7:18-21) (emphasis added).

FED. R. EVID. 103(a). The record excerpts Magema presents as error drew

no objection.[72]

On the contrary—Magema itself elicited some of the testimony it

challenges: "that you have to have flashpoint tests made to validate the

flashpoint and not to do estimates of the flashpoint . . . ."[73] That testimony

responded to a question posed by *Magema*:

> Do you understand that one of Phillips 66's
> arguments in this litigation is that Magema has to
> provide actual testing of physical samples to prove
> a flash point of the product meets or if the feed
> meets the ISO 8217 specification?[74]

By affirmatively eliciting actual-testing testimony, Magema not only

failed to preserve error but waived its objections. *E.g.*, *United States v.

Davis*, 443 F.2d 560, 564–65 (5th Cir. 1971) (failing to object and then

"elicit[ing] further information" and "stress[ing]" the information the

adversary adduced waived error).

Days passed, and statements Magema now challenges entered the

---

[72] *See* Br. 26-28.

[73] Br. 27 (citing Appx0907) (199:20-25).

[74] Appx0907 (199:16-19).

record without objection.[75] Not until the third day of trial did Magema raise an actual-testing issue again. Even then, the issue it identified is not the one on appeal. Magema first approached the district court about an evidentiary issue it does not challenge here—specifically, "excluded evidence" of test results that Phillips 66 offered to Magema but Magema rejected, and for which Magema conveyed it "would like an instruction to the jury to cure that harm . . . ."[76]

Only after facing rebuke for pressing the "absolutely untrue" argument that Phillips 66 "ha[d] refused to give us the samples" did Magema raise "actual testing."[77] As before, though, Magema pivoted to a different argument than the one on appeal. It complained below that Phillips 66 was "arguing in front of the jury that we can't rely on those estimations."[78] Magema complains on appeal that Phillips 66 should not have argued actual testing was required; it does not challenge arguments that Riazi was unreliable. Whether estimations were reliable—that is, whether the jury should credit Magema's Riazi method of estimation—

---

[75] *See* Br. 26.

[76] Appx0956 (148:9-13).

[77] Appx0957 (149:5, 150:4).

[78] Appx0957 (150:8-9).

was one of many fact issues for the jury to decide. And in any event, the district court did not foreclose Magema from making further objections during the trial. It merely indicated that Magema could "file something . . . if you want."[79]

On day four, when the trial was more than halfway over, Magema filed a motion for a curative instruction and sought to strike testimony or argument.[80] Magema's motion was insufficient to preserve error. A motion to strike or cure unobjected testimony—especially for alleged error that Magema told the district court occurred "throughout the case"[81]—does not satisfy the preservation requirement that objections be made contemporaneously. *See Pettigrew*, 77 F.3d at 1516 n.14 (moving to strike testimony "the following day" is not a "*timely* objection" under Federal Rule of Evidence 103(a)) (emphasis in original).

The court thus acted within its discretion to deny the untimely instruction Magema requested. The request was also unfounded. Magema asked the court to instruct the jury that "Magema's estimations"

---

[79] Appx0957 (151:5-6).

[80] Appx1093; Appx1993.

[81] Appx1065 (242:24-25).

were a sufficient substitute for test data.[82] That proposed instruction would usurp the fact issue of whether Magema's Riazi estimates were reliable. And in denying Magema's request, the court merely declined to give an instruction; it did not rule "definitively" that Magema could not object to testimony or evidence going forward. FED. R. EVID. 103(b). Magema never did.

Magema also did not object during closing.[83] In denying Magema's motion for new trial, the court correctly determined that "[o]bjections to improper closing arguments not made contemporaneously [were] waived, and Magema [was], therefore, 'barred from urging the improper arguments as grounds for a new trial after the jury . . . returned its verdict.'"[84]

Unable to admit it chose to gamble on unpreserved error, Magema blames the judiciary. It first claims the district court "made objections . . . before the jury as difficult as possible."[85] That is irrelevant and untrue.

---

[82] Appx1094.

[83] Appx1082-87 (92:24-109:10).

[84] Appx0130 (quoting *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988)).

[85] Br. 34.

The district court invited objections.[86] And Magema indeed made some—but none to whether the claims require actual testing.[87]

Magema also blames the court for supposedly failing "to permit *limine* motions."[88] This too is an irrelevant half-truth. The trial court allowed the parties to argue pre-trial evidentiary issues and ruled on them as "motions in limine."[89] Magema used this mechanism to the fullest, seeking to exclude seven topics—none of which pertains to actual testing.[90]

Magema's reasons for declining to make timely objections are unimportant, but they were likely sound. Magema hoped the actual-testing argument would make way for a shift in the parties' burdens of proof.[91] And when it faced a fork in the road—whether to object and seek to exclude the actual-testing argument, or whether to parlay the argument in its favor to prove willfulness under its theory that Phillips

---

[86] *E.g.*, Appx0849 (59:25-60:2).

[87] *E.g.*, Appx0917 (238:9-11); Appx0919 (245:8-10).

[88] Br. 34.

[89] Appx0818 (12:14-17); Appx0819 (13:12-13).

[90] Appx0581-82.

[91] Appx0846 (7:10-13).

66 never provided testing data—Magema chose the latter.[92] Those strategic choices have appellate consequences—among them, plain-error review.

### 2.    There Is No Plain Error.

To "satisfy plain-error review," Magema "must show that (1) there was an error, (2) that was clear or obvious, (3) that affected [its] substantial rights, and (4) that [this Court] should exercise [its] discretion to remedy the error because it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Garcia-Ascanio v. Spring Indep. Sch. Dist.*, 74 F.4th 305, 309 (5th Cir. 2023) (citations and quotations omitted). It is a "longstanding rule" that "reversal for plain error is not a run-of-the-mill remedy and will occur only in exceptional circumstances to avoid a miscarriage of justice." *Highlands Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 27 F.3d 1027, 1032 (5th Cir. 1994) (citations and quotations omitted).

Magema cannot meet any element of plain error. As to the first element, although Magema uses the term "plain error" twice,[93] it fails to

---

[92] *See, e.g.*, Appx0956-57 (148:23-150:2).

[93] Br. 6, 42.

ask for plain-error correction or explain why the plain-error prongs are satisfied. This is enough to dispose of the appeal. *In re: Deepwater Horizon*, 824 F.3d 571, 583 (5th Cir. 2016). Moreover, the thrust of Magema's argument appears to be that Phillips 66 should not have made "improper and prejudicial" arguments, yet the only legal explanation for *why* these arguments were supposedly improper occurs in two footnotes where Magema suggests judicial estoppel and law of the case apply.[94]

Whatever the alleged error, it cannot meet the second element of being a "clear or obvious" one. Judicial estoppel and the law of the case are discretionary doctrines for the court's benefit. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Arizona v. California*, 460 U.S. 605, 618 (1983). Any court error in failing to cobble together prior discovery hearing transcripts and discovery orders and measure them against the unfolding trial, all while no party presented the discretionary doctrines of judicial estoppel or law of the case, was not "error so 'plain' the trial judge and [Phillips 66] were derelict in countenancing it" even though Magema did not raise it. *U.S. v. Frady*, 456 U.S. 152, 163 (1982).

As to the third element, Magema cannot show an error affecting its

---

[94] Br. 56 n.9, 57 n.10.

substantial rights because the district court did not clearly abuse its discretion in finding that the argument Magema challenges did not affect the outcome of the trial. *Infra* Argument § I.B.2.

And as to the fourth element, Magema cannot show an error so "substantial that failure to notice it would affect the fairness, integrity, or public reputation of the judicial proceedings and would result in manifest injustice." *Garriott v. NCsoft Corp.*, 661 F.3d 243, 248–49 (5th Cir. 2011) (citations and quotations omitted). Magema compares this case to the Fifth Circuit's recent decision in *Clapper,* claiming Phillips 66's "trial tactics" "tarnish the badge of evenhandedness and fairness that normally marks our system of justice."[95]

This case and *Clapper* bear no resemblance. The conduct that prompted the Fifth Circuit to order a new trial in *Clapper* defies belief. Counsel "abandoned all dignity, order, and decorum" by employing personal attacks, unsupported allegations of fraud on the court, misstatements about the court's rulings, and appeal to local bias, all in front of the jury—*none* of which occurred here. 95 F.4th at 315-17.

---

[95] Br. 36 (quoting *Clapper v. American Realty Invs., Inc.*, 95 F.4th 309, 314 (5th Cir. 2024)).

*Those* are the kinds of vigilante tactics that "tarnish the badge of evenhandedness and fairness." Magema cannot show, and has never truly attempted to show, that Phillips 66 did anything like what occurred in *Clapper*. The district court determined that statements were "improper" and "prejudicial" only because of a prior discovery dispute,[96] not because Phillips 66 "abandoned all dignity, order, and decorum" or falsified evidence. *Clapper*, 95 F.4th at 315.

Nor was there any "miscarriage of justice,"[97] and until this appeal was its last chance, Magema agreed. Magema's motion for a new trial claimed merely that actual-testing arguments were "not found in the claims or [the] Court's instructions."[98] Magema challenges only a few lines of a thorough district-court determination following a fair trial in which Magema strategically chose to forgo error preservation. The court rightly recognized that "[t]he conduct of defense counsel about which Magema complains is nothing comparable to the conduct that [led] the Fifth Circuit to grant new trials. . . ."[99]

---

[96] Appx0108-09.

[97] Br. 6.

[98] Appx2087-2119.

[99] Appx0135.

**B.    The District Court's Denial of Magema's Motion For New Trial Cannot Be Reversed Because Magema Does Not Challenge Its Holding And Because That Holding Does Not Contain Reversible Error.**

Independent of Magema's failure to show plain error, Magema's first issue fails even on its own terms, and twice-over: Magema does not challenge the district court's actual holding in denying the motion for a new trial, nor does that holding contain reversible error.

**1.    By Failing To Contest The District Court's Manifest Injustice Determination, Magema Fails To Allege An Error Susceptible To Reversal.**

Magema fails to allege an error capable of entitling it to relief because it does not challenge the court's manifest injustice finding, which is the standard for a new trial. Instead, Magema challenges only what it calls the district court's harmless-error analysis. The upshot is that even assuming (counterfactually) that the answer to Magema's Issue One is "yes," the outcome is still to affirm, because Magema does not seek and cannot obtain reversal of the trial court's basis for denying Magema's motion for new trial—that independently of any improper counsel argument, no manifest injustice occurred.

Magema's legal misstep is that it confuses what a district court *may* do for what it *must* do. A district court *"may"* grant a new trial if it finds

"the trial was unfair or *prejudicial error* was committed." *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir. 1985) (emphasis added). In other words, a harmless or non-prejudicial error is not sufficient to vest the district court with authority to grant a new trial; a harmful one can be. This distinction tracks Federal Rule of Civil Procedure 61, which requires district courts to disregard harmless error.

Here, the district court did multiple things: (i) it observed that certain of counsel's statements were improper and prejudicial, but that these were harmless because Magema failed to meet its burden to show these statements affected the outcome of the trial, and because those statements in fact did not affect the outcome of the trial;[100] and (ii) that independently, a review of the trial record as a whole shows no manifest injustice occurred.[101] Even if, counterfactually, Magema's Issue One were right in showing that the actual-testing arguments in fact were not harmless—thereby affecting only subsidiary holding (i)—that would simply mean the district court would have stepped closer to acquiring discretion to grant a new trial because the harmless-error impediment

---

[100] Appx0111-12.

[101] Appx0113; Appx0134-36.

had given way. *See Smith*, 773 F.2d 613.

But discretion is not a mandate. There is only one circumstance applicable here when a district court *must* grant a new trial and has abused its discretion in doing otherwise. That is when "manifest injustice will result from letting the verdict stand." *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 731 (5th Cir. 2011). To show reversible error, Magema therefore must prove that the district court "clear[ly] . . . abuse[d its] discretion" by ignoring a "manifest injustice requiring reversal." *Id.* at 731-32.

Magema does not try, because the district court's discretion is nearly unassailable. Appellate review by the "cold record" is simply no substitute for the trial court's front-row seat. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1308 (5th Cir. 1977). And discretion reaches its zenith when, as here, a new trial is denied rather than granted. *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998).

That is why circuit courts rarely reverse denials of new-trial motions, and never on records like this one—so much so that even fairly shocking fact patterns fail to pass muster. *See Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 765–66 (5th Cir. 1989) (Fifth Circuit did "not

necessarily approve of the closing argument" that included egregious statements and no curative instruction, but could not say "verdict is inconsistent with substantial justice" so affirmed denial of motion for new trial).

The rare Fifth Circuit caselaw ordering a new trial shows how extreme manifest injustice must be. Compare this case to *Hall v. Freese*, 735 F.2d 956 (5th Cir. 1984). The defense falsely told the jury throughout trial that the plaintiff was "a woman who had flouted respect for marriage vows, who had used illegal drugs, and who was trying to take advantage of the good people of rural northern Mississippi," and made other statements so "improper" they had "no place in a federal court." *Id.* at 956, 960-61. Even so, "absent a timely objection" (as is true here), the court "would not reverse . . . on the basis of these remarks alone." *Id.* at 961-62. Instead, the Fifth Circuit performed a searching review of the entire record, evaluating the statements, the strength of the plaintiff's case, the extensive and uncontradicted damages evidence in her favor, and the inexplicable nature of the jury's verdict but for the misconduct. *Id.* at 959. Only then did the Fifth Circuit reverse for "manifest injustice." *Id.* at 962.

Magema's insinuation that this case is anything like those warranting retrial defies credibility. Phillips 66 did not "present . . . facts of its own making to the jury[.]"[102] The district court found, and the record is plain, that Phillips 66 "presented evidence [without objection] that the ISO standards required testing of actual samples . . . ."[103] And Phillips 66's evidence about feed-sample testing—determined by the district court to be "relevant"—is not akin to falsely calling the opposing party a drug-addled philanderer.[104] Finally, Magema has not claimed the jury verdict does not make sense setting aside the "actual testing" issue entirely, which distinguishes these facts from *Hall*.

In sum, the district court's independent manifest-injustice holding insulates its new-trial denial from Magema's distinct harmless-error appeal here. Even if Magema prevailed in its Issue One that the district court "erred in its application of the harmless error doctrine,"[105] that at most would give the court *discretion* to grant a new trial. But the district court did not deny the motion for new trial for lack of discretion to grant

---

[102] Br. 4.

[103] Appx0108.

[104] *Compare* Appx0111, *with Hall*, 735 F.2d at 960.

[105] Br. 40.

it, but because there was no manifest injustice.[106] And were this Court to review under the correct manifest-injustice standard even though Magema did not, there is no clear abuse of discretion to be found.

### 2. Even If This Court Reaches The District Court's Subsidiary Harmless-Error Analysis, That Analysis Contains No Reversible Error Because Magema's Substantial Rights Were Unimpaired.

Because the holding below stands irrespective of Magema's first Issue Presented, this Court need not reach that issue. But if it does anyway, Magema's appeal would still fail because Magema has not shown that the district court's harmless-error analysis contains any reversible error.

Under Federal Rule of Civil Procedure 61, "the court must disregard all errors and defects that do not affect any party's substantial rights." This is the harmless-error standard. "A ruling has affected the substantial rights of the party if, when considering all of the evidence presented at trial, the ruling had a substantial effect on the outcome of the trial." *Waterman v. McKinney Indep. Sch. Dist.*, 642 Fed. Appx. 363, 368 (5th Cir. 2016).

---

[106] Appx0136.

Magema's textual challenge to the district court's legal reasoning relies on a false reading. Magema suggests that by finding an argument "prejudicial," the district court meant harmful error had occurred.[107]

But a prejudicial *argument* and a prejudicial *error* are two different things. A prejudicial argument is one adverse to the other side; this is the ordinary legal meaning of "prejudice." *See, e.g., Hinojosa v. Butler*, 547 F.3d 285, 295 (5th Cir. 2008) (describing prejudice as "the natural and intended consequence of the admission of evidence by another"). "Prejudicial error," by contrast, is a term of art meaning "not harmless" under the standards requiring the court to disregard harmless errors. *E.g., Avid Technology, Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1047 (Fed. Cir. 2016). The district court noted that an argument was "prejudicial" in the former sense—that it was introduced against Magema—and not in the sense that it warranted a new trial under harmless-error review. If by "prejudicial" the district court meant the argument was not harmless in the error-review sense—*i.e.*, if it meant "that argument affected the outcome of the trial"—it would have said so, instead of this: "[T]hat

---

[107] *E.g.*, Br. 31-32 ("A prejudicial error is not harmless by definition . . . . And the district court concluded that Phillips' arguments were improper and prejudicial.").

argument did not affect the outcome of the trial."[108] And if the district court intended to find that Phillips 66's arguments constituted harmful error, it would have used words like "harm" and "error." It did not. Magema's only basis for arguing that the district court's opinion was legally erroneous is refuted by the order's plain text.

Because the district court did not misapprehend the meaning of its own words, Magema's real beef is with the district court's factual determination that Phillips 66's argument did not affect the outcome of the trial. Magema fails there too.[109] It cites a single case to mean that a general verdict cannot stand if an improper argument was made to the jury.[110] *Network-1 Technologies* is irrelevant: it was a *de novo* review of a claim construction; it was not under Fifth Circuit law; and it concerned fundamental error in a jury charge. 981 F.3d at 1022. Decades of Fifth Circuit precedent refute Magema's legal position anyway. *E.g.*, *Muth v. Ford Motor Co.*, 461 F.3d 557, 564-65 (5th Cir. 2006) (explaining that the Fifth Circuit has "engrafted a sort-of harmless error gloss" in cases where

---

[108] Appx0112.

[109] *See* Br. 43-53.

[110] Br. 48 (citing *Network–1 Techs., Inc. v. Hewlett–Packard Co.*, 981 F.3d 1015, 1025–26 (Fed. Cir. 2020)).

the jury uses a general verdict form). If law supporting reversal exists, Magema has waived the opportunity to provide it.

In this legal desert, Magema's harmless-error analysis gets the "proper question" wrong.[111] It is not "whether the jury *could have* found for Magema had Phillips not made such improper and prejudicial arguments."[112] "The Constitution does not guarantee a perfect trial, only one that is fair." *United States v. El-Mezain*, 664 F.3d 467, 535 (5th Cir. 2011), as revised (Dec. 27, 2011). The proper harmlessness question is simply whether "the jury's verdict was amply supported even without" considering the challenged argument. *Foradori v. Harris*, 523 F.3d 477, 508 (5th Cir. 2008); *see also Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,* 895 F.3d 1304, 1316 (Fed. Cir. 2018) (error in submitting legally erroneous theory to jury was harmless).

The verdict here had such support; the district court did not abuse its discretion in determining that the actual-testing argument did not affect the outcome of the trial. First, actual testing was not the central issue in dispute. As the district court correctly observed, the actual-

---

[111] Br. 46.

[112] Br. 46 (emphasis added).

testing argument is irrelevant unless the jury made multiple other predicate findings in Magema's favor.[113] This cuts in favor of the district court's determination that the argument did not affect the trial. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 895 (5th Cir. 1998).

Second, the verdict was at least "based largely" on the strength of Phillips 66's primary arguments, which "cuts strongly in favor of a harmless error conclusion[.]" *Tex. Advanced*, 895 F.3d at 1316 (Fifth Circuit law). There is no sign the jury sided with Magema on the two predicate arguments necessary for the actual-testing argument to enter play, and plenty indication they did not.[114] Because "[Phillips 66] presented sufficient evidence for a reasonable jury to find" in its favor excluding the actual-testing argument, "[Magema] fails to show that [the actual-testing argument] affected its substantial rights." *See Harris v. FedEx Corp. Serv.*, 92 F.4th 286, 304 (5th Cir. 2024); *see also Echeverry v. Jazz Casino Co., L.L.C.*, 988 F.3d 221, 235 (5th Cir. 2021).

Third, "error in admitting evidence will be found harmless when the evidence is cumulative, meaning that substantial evidence supports

---

[113] Facts § III at 8-9; Appx0112.

[114] Facts § III at 8-9.

the same facts and inferences as those in the erroneously admitted evidence." *United States v. El-Mezain*, 664 F.3d 467, 526-27 (5th Cir. 2011), as revised (Dec. 27, 2011) (collecting cases). The actual-testing argument Magema challenges was cumulative of testimony Magema deliberately elicited.[115] And the argument springs from documentation the parties admitted into evidence without objection.[116] On that documentary evidence alone, the jury could have reasonably found that the claims required actual testing. *See Union Pump Co. v. Centrifugal Tech. Inc.*, 404 Fed. Appx. 899, 908 (5th Cir. 2010) (harmless error where testimony was "corroborated" by admissible evidence).

Fourth, whether actual testing within the battery limits was necessary was a small part of the trial. *See Winter v. Brenner Tank, Inc.*, 926 F.2d 468, 473 (5th Cir. 1991) (requiring conduct to "permeate[] the proceedings"); *see also United States v. Achobe*, 560 F.3d 259, 271–74 (5th Cir. 2008) (considering length of trial record). The district court correctly looked to this factor: "If you think they [the jury] remember a three-minute discussion over here, you have a greater appreciation for

---

[115] *E.g.*, Appx0907 (199:16-200:10); Appx0928 (33:5-35:10).

[116] Appx2045-74; *e.g.*, Appx0894 (146:6-13).

everybody's understanding than I could."[117] Including testimony *Magema itself* elicited, Magema relies on statements totaling scarcely two pages out of over 1,000 in a seven-day trial.[118]

Fifth, the jury did not hear one side of the story. Magema told the jury its view of why actual-testing was not required: because Magema did not get the samples its wanted.[119] Admission of improper and highly prejudicial evidence and argument has been found harmless when the other party had a chance to place it in context. *E.g., Abner v. Kansas City Southern R. Co.*, 513 F.3d 154, 168–69 (5th Cir. 2008).

Finally, the district court mitigated any prejudice resulting from the actual-testing argument. As Magema proposed, the district court instructed the jury that "[t]he statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence."[120] "[J]uries are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S.

---

[117] Appx1065 (243:1-4).

[118] Br. 26-27.

[119] *E.g.*, Appx0928 (34:15-18); Appx2040 (79:23-80:8).

[120] Appx2008-37.

534, 540 (1993).

All that is left of Magema's first issue is a stray footnote challenging the district court's denial of a burden-shifting motion that has nothing to do with this appeal.[121] The district court properly denied that motion,[122] and Magema waived this issue on appeal. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (citation omitted) ("[A]n argument raised in a footnote in an opening brief was waived as not properly raised.").

## II.   Magema's Second Issue Fails To Raise A Preserved Or Valid *O2 Micro* Challenge.

Magema's second issue fails no matter how this Court views it. First, Magema failed to preserve the issue by arguing a fundamentally different error in the court below. Second, it waived any *O2 Micro* challenge by failing to request a claim construction on the terms it now challenges. And third, Magema's *O2 Micro* challenge fails on the merits even if it were properly presented here.

---

[121] Br. 47 n.7.

[122] Appx0069-76.

### A.   Magema Failed To Preserve This Issue For Appeal Because The Challenge Magema Raised Below Is Fundamentally Different From The One It Raises Here.

Magema's *O2 Micro* challenge is striking in the odd types of rulings it appeals—an incongruity born of attempts to deflect from the fundamental break between how it raises this issue here versus how it raised it below. As to "compliant with ISO 8217:2017," Magema points not to any *Markman* order (where Magema prevailed in full) or other claim construction ruling, but rather to a denial of Magema's motion for curative instruction that dealt solely with the consequences of a discovery dispute. As to "prior to hydroprocessing," it is puzzling what ruling Magema appeals at all—at times it mentions the summary judgment rulings, where Magema prevailed;[123] or complains of a pre-trial order while admitting that "the district court rejected Phillips' argument";[124] or objects to the jury instructions, though Magema requested none;[125] or suggests the court should have acted sua sponte in response to no request at all.[126]

---

[123] Br. 61, 68.

[124] Br. 68-69.

[125] Br. 70-71.

[126] Br. 68, 71.

This fishing about speaks volumes. Magema fails to mention that its challenge about the jury being permitted to decide limitations outside the scope of these exact claim terms *was the basis of Magema's motion for a new trial*, an argument the district court's opinion spent pages debunking.[127]

That silence is because the issue Magema raised below is fundamentally different than the one it raises here. Below, Magema moved for a new trial because *Phillips 66* allegedly acted improperly.[128] The premise of the motion was that patent terms were construed by stipulation, or spoke for themselves, yet Phillips 66 defied their limits to procure a verdict against "the overwhelming weight of evidence."[129] Phillips 66 responded that Magema failed to object at trial and that "Magema's challenges rest on claim limitations that were not subject to court claim construction."[130] And on reply, Magema *conceded* that no party had requested a claim construction, contending that "Magema was

---

[127] Appx0097-108 ("[T]he court is not persuaded that Defendants argued a limitation not found in the claims . . . .").

[128] Appx2099-2103, Appx2101 n.6; Appx2092.

[129] Appx2095.

[130] Appx0097; Appx2134-36.

not obliged to request" one[131] and reiterating the issue as being Phillips 66's improper arguments.[132]

Nowhere is there any hint that the supposed error is what Magema contends now: the *district court's* failure or refusal to construe the claims altogether. Before this appeal, Magema never even cited *O2 Micro*.[133] The district court spent nearly a dozen pages carefully addressing this issue as Magema had raised it, explaining how Phillips 66 "Did Not Argue Limitations Not Found in the Claims."[134] It explained how "[a]bsent the court's construction of a claim term, the jury was free to rely on the term's plain and ordinary meaning."[135] Since "no party sought the court's construction of the term 'prior to hydroprocessing'" or "'compliant with ISO 8217:2017,'" and both "parties presented conflicting evidence on" them, Phillips 66's arguments were proper.[136]

In changing tack here, Magema ambushes the district court's

---

[131] Appx2151.

[132] Appx2150.

[133] Appx0455-86; Appx1093-99.

[134] Appx0097-108.

[135] Appx0098.

[136] Appx0103-04; Appx0106-08.

judicial function. Had Magema instead objected to the trial judge that in fact it was *he* who had failed, the judge could have issued any missing claim constructions—and prevented the monstrous waste of resources that necessarily followed if Magema's appellate issue was preserved. This Court need go no further to affirm on Issue Two.

> **B.    Magema Waived Its *O2 Micro* Argument By Failing To Request A Claim Construction On Either Of Its Challenged Terms.**

Magema also waived its *O2 Micro* challenge in the trial court by failing to request construction of the challenged terms. A party who "'never requested that the district court construe any terms in the relevant claim and never offered a construction of that claim'" has "waived its right to request a construction" of any terms and "thereby implicitly conceded that the meanings of" those terms "is clear and not in need of construction." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) (quoting *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004)) (cleaned up). Magema's "reliance on . . . *O2 Micro* is misplaced," because "[u]nlike in *O2 Micro*, where the parties disputed the proper construction of a term at a pre-trial *Markman* hearing," Magema "failed to offer its proposed construction . . . at or prior

to trial, and [this Court] reject[s] such arguments raised for the first time after the jury verdict." *Id.*

Magema is even worse off than the parties who suffered waiver in *Broadcom* and *Eli Lilly*. Not only did Magema never request a claim construction for these terms at *Markman* or anywhere,[137] even its post-trial motions continued to concede that no party requested construction and that these terms were subject only to factual and evidentiary challenges. *See supra* Argument § II.A.

Crucially, the district court required the parties to file a joint pretrial statement identifying all "Additional Issues To Be Addressed By the Court" and all "Contested Issues of Law" remaining for trial (precisely to prevent this kind of ambush).[138] In doing so, the parties jointly requested only that the court address "*evidentiary* disputes raised by the parties during the upcoming pre-trial conference,"[139] and Magema stated that its only contested issues of law remaining were those set forth

---

[137] Appx0103; Appx0107; Appx0004-05; Appx0231; Appx0260 (same); Appx1829 (providing agreed construction for "compliant with ISO 8217-2017").

[138] Appx0536.

[139] Appx0575.

in its pretrial Memorandum of Law and Proposed Jury Charge.[140] While Magema raised a litany of remaining legal issues therein, *not one* contends that the district court owed Magema any claim construction.[141]

Indeed, Magema proposed the (jointly agreed) jury instruction that "[f]or a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent."[142] Magema then prepared the notebook given to the jury, which contained the claim constructions the court issued at *Markman* but no constructions—proposed or actual—of "prior to hydroprocessing" or "compliant with ISO 8217:2017" (beyond the stipulated one that it must meet Table 2).[143] The same goes for Magema's proposed jury charge.[144] Yet Magema nevertheless blames the "district court" as being "obligated to give [a] construction to the jury in its instructions" that no party asked the court to give.[145]

---

[140] Appx0551.

[141] *See* Appx0579-609; Appx0641-707.

[142] Appx0651; *see also* Appx1830-31.

[143] Appx0845 (4:13-17); Appx1137.

[144] Appx0672.

[145] Br. 71.

Three effects follow. One, Magema is bound by what it said the jury should be told—that for questions on which no definition was provided in the jury notebook or charge, such as the "actual testing" or "prior to hydroprocessing" ones it challenges here—it was *correct* for the jury to "apply the ordinary meaning of the term" as the jury determined it on the evidence.[146] Two, these admissions knock out every waived reinvention on appeal—that the district court was asked to, but failed, to make a legal ruling on outstanding claim terms;[147] that it was error to allow the jury to apply the ordinary meaning of terms with no construction but disputed factual evidence;[148] and that the district court impliedly did construe the claim terms but erroneously failed to instruct the jury of those constructions.[149] And three, Magema's failure to request a jury instruction construing the challenged terms[150] itself waives its claim construction argument. *E.g.*, *Lighting Ballast Control LLC v. Philips*

---

[146] Appx0651.

[147] Br. 58, 67.

[148] Br. 54, 58, 60.

[149] Br. 60, 70-71.

[150] Appx0641-707; *see also* Appx2002-06 (243:10-256:23 (Charge Conference)).

*Elecs. N. Am. Corp.*, 790 F.3d 1329, 1337–38 (Fed. Cir. 2015).

Furthermore, this Court's waiver holdings in two strikingly similar cases are blueprints for the outcome that should follow here. In one, like here, the parties agreed to a certain meaning for a claim limitation[151] but "[n]either party asked the court to further construe the . . . limitation,"[152] and so "[d]uring trial, the Defendants contended that to prove that" the claim was met only if the technology was located at a particular place, while the plaintiff argued that the claim was not so limited and the technology could appear in other locations.[153] *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1375 (Fed. Cir. 2010).[154] After the jury's noninfringment verdict, that plaintiff sought a new trial "because the district court erred by failing to further construe the . . . limitation[, arguing] that the parties disputed the scope of the limitation, and, despite recognizing the nature of the dispute, the court failed to resolve the issue, effectively leaving the jury to determine the meaning of the

---

[151] Appx1829.

[152] *See supra* n.137.

[153] *See, e.g.*, Appx2040 (78:12-13, 80:2-5).

[154] Federal circuit precedent applies to claim construction waiver. *Lazare*, 628 F.3d at 1376 (citation omitted).

limitation"—Magema's argument to a tee.[155] *Id.* at 1375-76.

This Court held that appellant waived its *O2 Micro* challenge because it had not "presented its claim construction argument . . . during a *Markman* hearing" and instead "first asserted the claim construction argument it presses on appeal in a post-trial motion" (even sooner than Magema, who raises it for the first time on appeal). *Id.* at 1376 (citing *Broadcom*, 543 F.3d at 694). The same excuses Magema presses here were unavailing. Appellant argued that "the court was allegedly aware of the issue before the trial concluded," pointing to various court statements noting that the issue was disputed—just like Magema.[156] *Id.* at 1376. But this Court refused to equate those with "the court [being] aware of the argument that [appellant] now raises on appeal." *Id.*

Another case also requires waiver. There, like here, an appellant argued that "the district court's failure to resolve a legal dispute regarding the scope of [a claim] limitation constituted error under *O2 Micro.*" *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1322 (Fed. Cir.

---

[155] Br. 54-60.

[156] Br. 57-59, 61-62.

2016).[157] And there—like Magema's appellate challenges regarding how "compliance with ISO:8217" is measured and where "prior to hydroprocessing" is[158]—the parties had litigated at the *Markman* stage and elsewhere "the *degree*" of compliance that was needed but not "*from where*" that compliance was to be measured. *Id.* at 1323 (emphasis in original). The parties likewise disputed the issue at trial,[159] and the appellant complained that appellees' evidence did not comply with the claims and was sent to the jury in violation of *O2 Micro*.[160] *Id.* at 1322-23.

But this Court explained that appellant failed to "timely request modification of the district court's claim construction." *Id.* at 1323. Appellant, like Magema, pointed to various motions and objections.[161] *Id.* "However, in those instances, [appellant] merely sought to exclude testimony contrary to the district court's claim construction . . . or to have the court instruct the jury as to the degree of removal" that had already

---

[157] Br. 54-55, 59-62, 70-71.

[158] Br. 16-25.

[159] Br. 25-30.

[160] Br. 33-36.

[161] Br. 20, 22-23, 29-30.

been subject to claim construction. *Id.* Again, so too here, where again and again Magema *and* the district court made clear that its rulings were evidentiary and no party had requested a claim construction on the terms at issue.[162] This Court held that appellant's "failure to sufficiently request further construction of the relevant limitation leading up to and during trial" meant that it "fails to properly raise an *O2 Micro* issue." *Id.* at 1322-23.

Likewise here. As the trial court put it, because "[n]o party sought the court's construction of 'compliant with ISO 8217:2017'" and whether that required actual testing, and "no party sought the court's construction of the term 'prior to hydroprocessing,'" "the jury was free to rely on the term's plain and ordinary meaning" as set forth by the parties' "vigorously disputed" evidence.[163]

Magema cannot, and really does not, contend here that it requested a claim construction of these terms below. Instead, like the doomed appellants in *Lazare* and *LifeNet*, Magema deflects attention to various *evidentiary* rulings where the parties disputed what facts and argument

---

[162] *See supra* Facts § II.A.

[163] Appx0098, Appx0103, Appx0107-08.

could go to the jury.

### 1. "Compliant with ISO 8217:2017."

As to whether actual testing is required under the term "Compliant with ISO 8217:2017," Magema admits that "the parties[ had] an agreed construction" that "is silent about how compliance with ISO 8217:2017 is to be determined"—it does not contend it ever asked the court to construe it.[164] Instead, Magema denigrates the judge as someone who "frankly didn't understand Magema's argument" until "finally" "[u]nderstanding the issue at last" after "five days of trial," yet nevertheless "did nothing to *correct* the problem" despite recognizing the parties had a "fundamental dispute."[165] The real failure lay not in the judge's comprehension but in Magema's failure to request a claim construction. That "the court was allegedly aware of the issue before the trial concluded" is not enough—"it was incumbent upon" Magema "to raise its claim construction argument before the district court, and, having failed to do so," it "cannot now resurrect that argument on appeal by pointing to ambiguous statements in the record." *Lazare*, 628 F.3d at 1376.

---

[164] Br. 54-55.

[165] Br. 25, 29, 57-59.

The closest Magema comes to faulting the district court's denial of any actual *request* is Magema's motion for a curative instruction.[166] But Magema stops well short of characterizing that motion as a claim construction request, for good reason.[167] Magema's motion had nothing to do with claim construction—it was solely about Phillips 66's comments regarding the discovery dispute.[168] As in *LifeNet*, Magema "merely sought to exclude testimony contrary to the district court's claim construction"—or, even weaker, contrary to its discovery rulings—not to correct any *O2 Micro* problem. *LifeNet*, 837 F.3d at 1323.

Finally, Magema includes two footnotes about Phillips 66's arguments being barred by "judicial estoppel."[169] "[A]n argument raised in a footnote in an opening brief [is] waived as not properly raised." *SmithKline*, 439 F.3d at 1320 (citation omitted). It was waived below.[170] And it makes no sense. *Contrast New Hampshire*, 532 U.S. at 749-50 (judicial estoppel "prevents a party from *prevailing* in one phase of a case

---

[166] Br. 58.

[167] Br. 57-60; Br. 29-30.

[168] Appx1098.

[169] Br. 56-57 n.9, 10.

[170] Br. 56-57 (not contending it raised this argument below).

on an argument and the relying on a contradictory argument"), *with* Br. 57 (conceding the trial court "decided against . . . Phillips' position").

### 2.    "Prior to Hydroprocessing."

As to the term "prior to hydroprocessing," Magema likewise does not contend that it requested a claim construction below, relying instead on evidentiary rulings like the ones that led to waiver in *Lazare* and *LifeNet*. First, Magema says it implicitly "asked the Court to resolve the dispute during summary judgment proceedings," and that "the district court implicitly rejected Phillips' interpretations in its pre-trial" evidentiary rulings yet nevertheless sent the dispute to the jury without "the benefit of the district court's implicit rulings."[171] Magema's attempt to equate evidentiary rulings with a claim construction request is textbook waiver. *LifeNet*, 837 F.3d at 1323. As for Magema's *implied* request,[172] that appears in its opposition to Phillips 66's motion to exclude Magema's expert testimony,[173] and the only relief it seeks therein is that

---

[171] Br. 61-62, 67-71.

[172] Br. 61, 68.

[173] Appx0475 (responding to Phillips 66's MSJ Issue 3, *see* Appx0456, which was whether the court should exclude expert opinions); *see also* Appx1856.

the motion to exclude be denied.[174] That is why the request appears only as a conditional one—"[t]o the extent that a construction is needed" to deny Phillips 66's motion to exclude, Magema requested one[175]—a request mooted by the court's reliance on other grounds to deny the motion.[176]

Even that conditional request is no claim construction request at all. Magema's premise was that its expert opinion remained relevant precisely *because* "no construction exists" as to the proper location for testing "feedstock."[177] That is why even on its face, the conditional request is merely one to "adopt [the] express specification definition" that "Feedstock HMFO" is a "petroleum product fuel compliant with ISO 8217"—a specification term that does not itself answer whether the independent claim term "prior to hydroprocessing" should be measured OSBL or ISBL (and is defining a *different* term, "Feedstock HMFO," to

---

[174] Appx0463-64.

[175] Appx0475.

[176] Appx0036-38.

[177] Appx0473.

boot).[178]

As for the district court's allegedly implied claim construction ruling in its summary judgment and pretrial orders,[179] it is logically incoherent to equate the district court's refusal to exclude Magema's expert testimony of where "prior to hydroprocessing" occurs with a ruling that "prior to hydroprocessing" means any particular place. On the contrary: the expert testimony remained relevant precisely because the parties had chosen to make the plain meaning a factual issue for trial by not requesting a claim construction.[180] This is why Magema agreed long after summary judgment that the district court had never construed the term "prior to hydroprocessing."[181]

## C. Magema Fails To Show An *O2 Micro* Problem On The Merits.

Magema's failure to request a claim construction is also why the court's duty to construe the terms never arose. Magema challenges only

---

[178] Appx0473-75; *see also* Br. 86 (admitting that "the express specification definition of feedstock HMFO[] did not require feed to be compliant at any specific place prior to hydroprocessing") (cleaned up).

[179] Br. 23, 69.

[180] Appx0036-38.

[181] Appx2150.

the court's failure to issue, sua sponte in trial, a claim construction merely upon "recogniz[ing] that the parties 'vigorously disputed' [a] claim term."[182]

But *O2 Micro* imposes no such duty. Magema asserts that because "the claims are *silent* as to how compliance with ISO 8217:2017" or the location of "prior to hydroprocessing" "is to be determined," Phillips 66 was not permitted to advocate for what the plain meaning of these terms required.[183] But Magema faced an affirmative burden below: "[I]f [appellant] desired such a narrow definition, it could (and should) have sought a construction to that effect." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012). "In the absence of such a construction, however, the jury was free to rely on the plain and ordinary meaning of the [claim] term." *Id.* That axiom would make no sense if the court must interject itself into the evidentiary process merely upon seeing competing interpretations. On the contrary, "a court need not attempt the impossible task of resolving all questions of meaning," and instead "a district court's duty at the claim construction stage is, simply, . . . to

---

[182] Br. 62; Br. 59.

[183] Br. 54, 56, 61, 70.

resolve a dispute about claim scope that has been raised by the parties." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318-19 (Fed. Cir. 2016); *Lazare*, 628 F.3d at 1376 ("[I]t was incumbent upon [appellant] to raise its claim construction argument before the district court.").

Magema's additional arguments build on this same foundation of legal sand. First, the target of Magema's challenge is not really the district court; rather, it alleges *O2 Micro* error arising from the arguments of Phillips 66's counsel. Magema appeals that "Phillips' litigation strategy is a clear violation of this Court's *O2 Micro* precedent."[184] It complains that "[n]othing in the parties' agreed construction requires actual testing of a sample[, y]et that is what Phillips argued at trial";[185] that "Phillips . . . paid no attention to the district court and continued to make the same" arguments "to the jury;"[186] and that "[w]ithout a construction from the district court," "Phillips was not free to argue" its view of the plain meaning "to the

---

[184] Br. 53.

[185] Br. 54.

[186] Br. 58.

jury."[187]

But *O2 Micro* duties run not to opposing counsel but to the court. *See O2 Micro*, 521 F.3d at 1362. This Court has dealt before with appellants who challenge "allegedly improper arguments" by opposing counsel in the guise of an *O2 Micro* challenge despite "never [having] identified . . . [in] the district court any specific claim term that was misconstrued or that needed further construction." *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1333-34 (Fed. Cir. 2010). "While [appellant] attempts to characterize the issue as one of claim construction, its argument is more accurately about whether [opposing counsel's] arguments to the jury about the distinction between [its system and the claims] were improper," a challenge reviewed under the law of the regional circuit. *Id.* at 1334. "At bottom, then, [Magema's] complaint rests not with the district court's failure to define claim scope, but with its allowing [Phillips 66] to make certain arguments to the jury," which is simply a challenge to improper argument in the guise of a "post-hoc *O2 Micro* challenge." *See GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1373 (Fed. Cir. 2016). That puts Magema back in Issue One, where its

---

[187] Br. 70.

challenge to these same terms is cast as one of improper counsel argument. Magema raises no distinct Issue Two.

Second, Magema repeatedly attempts to deflect attention from its own failure to request a claim construction by decrying that none was requested by Phillips 66: that "Phillips sought to circumvent the entire claim construction process," that "Phillips never sought any construction of this term," and the like.[188] But Phillips 66 is not the party complaining about the lack of claim constructions. As already explained, "it was incumbent upon" *Magema* "to raise its claim construction argument before the district court." *Lazare*, 628 F.3d at 1376.

Third, whether "complianc[e] with ISO 8217:2017" can be shown through tests or samples, and whether "prior to hydroprocessing" "must be established by testing a sample collected" OSBL or ISBL—questions on which Magema admits the claim terms are "silent"[189]—are "factual questions relating to the test for infringement" that are appropriate for the jury even if Magema *had* raised a claim construction request below (which it did not). *Lazare*, 628 F.3d at 1376. "Because the claim language

---

[188] Br. 53, 67-68.

[189] Br. 54, 61-62.

does not require a particular form of testing, this inquiry is not a claim construction question" at all, but simply "a question of fact." *Id.* (quotation omitted). Magema has not raised a sufficiency-of-the-evidence issue here. But even if it had, there is ample evidence supporting the jury's verdict of non-infringement. *See supra* Argument § I.B.2.

## III. The District Court's Erroneous Claim Construction In Magema's Favor And Refusal To Further Construe Claim Terms Provide An Alternative Grounds For Affirmance.

Even if this Court were to find that Magema both preserved and prevailed on its appellate issues, no "remand for a new trial is appropriate . . . because, when the claim terms are properly construed, no reasonable jury could have found that" Phillips 66 infringed the '884 Patent. *See Eon*, 815 F.3d at 1320. Indeed, the proper claim construction of the term at issue here—"Heavy marine fuel oil"—would have resolved infringement at Bayway at the summary judgment stage. The court's summary judgment denial is predicated solely on its claim construction[190]—and must fall because that claim construction was erroneous.

---

[190] Appx0061.

### A.    The District Court Adopted Magema's Erroneous Construction Of A Key Claim Term And Wrongly Refused To Construe It Further.

The district court ignored a distinction fundamental to the patents-in-suit. In their opening lines, these patents distinguish between "two marine fuel types, distillate based marine fuel oil, and residual based marine fuel oil."[191] The patents concern only the latter; the accused feed and products are only the former. Specifically, this case and the patents-in-suit concern "heavy marine fuel oils," or HMFOs.[192] The patents make two relevant claims about HMFOs. First, the patents expressly define them to be "residual" fuels,[193] which in turn they define as fuels "compris[ing] a mixture of process residues—the fractions that don't boil or vaporize even under vacuum conditions."[194] Second, such residual-fuel HMFOs must be "compliant with ISO 8217:2017 . . . ."[195] These requirements are different: a fuel can contain process residues, or be ISO 8217 compliant, or neither or both. The claims at issue speak only to an

---

[191] Appx0141 (1:5-6).

[192] Appx0141 (1:28-30); Appx0153 (25:27-36).

[193] Appx0153 (25:27-36); Appx0146 (11:22-28).

[194] Appx0141 (1:28-30).

[195] Appx0153 (25:27-36).

HMFO that is both a residual fuel and ISO complaint.

The district court erred in holding at the *Markman* stage,[196] and reiterating at the summary judgment stage,[197] that the claim term "Heavy Marine Fuel Oil" is construed solely as "a petroleum product fuel compliant with the ISO 8217 standards . . . ." In defining HMFO solely by its compliance with the ISO 8217 standards, the court's construction reads out altogether the patents' separate requirement that HMFO contain process residues—that is, "fractions that don't boil or vaporize." The consequences for the patents' scope are radical, erasing the patents' foundational distinction between distillate fuels and process-reside fuels: because a distillate-based fuel can also be compliant with ISO 8217,[198] patents that should have been limited to "process residue" fuels with "fractions that don't boil or vaporize" instead expanded to cover distillates.[199] And because the Phillips 66 refineries at issue process only distillate fuels that have been fully vaporized before they ever reach the hydrotreater, reading out the requirement that HMFO be limited to

---

[196] Appx0260.

[197] Appx0060.

[198] Appx0921 (6:10-7:2).

[199] Appx0141 (1:5-6, 1:28-30).

residual fuels containing "fractions that don't boil or vaporize even under vacuum conditions" itself erased a dispositive ground for noninfringment.[200]

The court's fundamental error was to take a patent limitation that is *descriptive* and make it *definitional*, to the exclusion of all other limitations. In the court's words, "the defining characteristic of the term [HMFO]" is "complian[ce] with the ISO 8217 standards."[201] That is an error of false equivalency. It is true that HMFO must be compliant with ISO 8217 standards; ISO 8217 compliance is a feature that HMFO must have in order to fall within the patent's scope.[202] But that does not define what *HMFO itself* is. By way of analogy, imagine a patent for a pet parrot accessory that claims a harness for a "bird that is (1) big, (2) red, and (3) loud." Those are three features that describe what the claimed use must be like. But they do not define the term "bird," which carries its own definition. To interpret the patented harness as being for Clifford—the beloved talking dog from children's books who also is big, red, and loud—

___

[200] Appx1878-80, ¶¶12, 15; Appx1074 (25:12-17).

[201] Appx0243.

[202] Appx0153 (25:27-36).

would be to ignore that "bird" has independent definitional significance beyond the three descriptive features. So too here. HMFO indeed must have the features of ISO 8217 compliance, but the term HMFO has independent meaning. And its meaning is answered by the patent specification itself, which defines HMFO in its first use of the term: "Heavy Marine Fuel Oil (HMFO) comprises a mixture of process residues—the fractions that don't boil or vaporize even under vacuum conditions . . . ."[203]

The *Markman* order initially recognized the definitional significance the patents gave to HMFO apart from ISO:8217 compliance, noting that (i) "the specifications do use 'heavy marine fuel oil' interchangeably with residual-based fuel oil, and [ii] residual-based fuel oil is *defined* in the '884 and '287 Patents as a mixture of process residues, which are defined in turn as the fractions that don't boil or vaporize even under vacuum conditions."[204] That should have been decisive; "[t]he specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication," and "[u]sually, it is

---

[203] Appx0141 (1:28-30).

[204] Appx0242.

dispositive" because "it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Three missteps made the district court write that definition out of its construction of HMFO. First, the court found it highly significant that the patents reiterate that HMFO is compliant with ISO 8217.[205] But that language supports Phillips 66 because it refers to "a heavy marine fuel oil *that is* ISO 8217 compliant."[206] The use of the phrase "that is" only makes sense if ISO 8217 compliance is a feature of HMFO, not its definition. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel.").

Second, the court erred by elevating claim language over specification language.[207] Despite having recognized the *specification's* HMFO definition, the court expressly relied on the fact that the

---

[205] Appx0244-245.

[206] *Id.*

[207] *E.g.*, Appx0242.

construction it adopts is reiterated in the *claims*[208] and faults Phillips 66 for being unable "to cite to any *claim language* that requires HMFO to contain process residue that does not boil or vaporize."[209] Giving primacy to claim language over specification language runs afoul of *Phillips*, 415 F.3d at 1315-16, which requires that specification language be at least on equal footing with the claim language in ascertaining the proper meaning of a claim term (and in fact the specification is "the best source" for claim meaning). *See also Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from th[at] context . . . .").

Third, the court's error may have stemmed from its focus on whether HMFO must contain any particular *amount* of residue rather than on whether it must contain *any*. While Phillips 66 initially argued that HMFO must contain a "majority" of process residues,[210] the court recognized Phillips 66's "contention that 'the dispute between the parties

---

[208] Appx0059-60; Appx0244-245.

[209] Appx0059-60 (emphasis added); Appx0245.

[210] Appx0242.

is whether the claimed HMFO must contain *any* process residues, because Magema accuses distillates that contain no[ne]."'[211] Rejecting Phillips 66's "majority" argument did not give the court license to write out of its claim construction the specification's HMFO definition.[212] Worse, when Phillips 66 sought further claim construction because the existing one "does not address the dispute between the parties . . . whether distillate materials that have *completely* boiled and vaporized can be considered a heavy marine fuel oil," which gave the court "a continuing obligation to address that dispute" under *O2 Micro*,[213] the court refused. And it did so by reiterating the same erroneous bases from its *Markman* order, principally that Phillips 66's proposed definition "merely recites a description in the specifications," and "fail[s] to cite any *claim* language that requires HMFO to contain process residue that does not boil or vaporize even at vacuum conditions."[214] In so doing, the court committed both classic claim construction error and *O2 Micro* error, by sending to the jury the claim construction question whether a residual

---

[211] Appx0058 (emphasis in original); Appx0238.

[212] Appx0242.

[213] Appx1906-07; Appx1857-58; Appx1122 (reurging at JMOL).

[214] Appx0059-60.

HMFO can encompass distillate fuels containing no process residues. Each error provides an alternative ground for affirmance.

### B. The District Court's Claim Construction Error Defeats Any Remand Because No Factfinder Could Have Found Infringement Had "HMFO" Been Properly Construed.

Not only did the claim construction error have case-dispositive significance for any possible jury finding—but-for the error, the case must have ended at summary judgment. The court's claim-construction error, not any evidentiary dispute, was the sole basis for its summary judgment denial.[215] At summary judgment, Phillips 66 explained how "Magema has never argued that the feedstock into the Bayway hydrotreater contains fractions that do not boil or vaporize," such that "Magema cannot raise a fact issue as to infringement of any asserted claim when the Court properly construes HMFO."[216] As the court noted, Magema's response was that Phillips 66's motion "hinges entirely on [the] previously-rejected construction" and "fails because it requests an untimely claim construction 'do-over.'"[217]

---

[215] Appx0061; Appx0065.

[216] Appx0054.

[217] Appx0054.

The only way Magema raised a fact issue was on a different point—that its expert opined that the Bayway distillate contains "process residues."[218] But even if that were right (which as explained below, is not), residues say nothing about the specific definition imposed by the patents (but not by the court): "fractions that do not boil or vaporize even under vacuum conditions."[219] Magema's expert analyzed Bayway's residues in depth without analyzing if the fuel has material that has not boiled or vaporized.[220] Of course those are different concepts, as Magema's own summary judgment data proves. Residue data uses the D86 distillation testing methodology to measure the condensed vapor that never left the flask—*i.e.*, the "residue."[221] Nowhere does the testing standard suggest that that "residue" failed to vaporize.[222] In fact, Phillips 66's undisputed summary judgment data showed that all Bayway samples have been completely boiled and vaporized by prior processing

---

[218] Appx0054; Appx0471-472.

[219] Appx0141 (1:28-30).

[220] Appx1892-96, ¶¶207-213.

[221] Appx1899; Appx1951, Appx1953, ¶¶10.7, 10.19 & Note 21; Appx1910-11.

[222] Appx1943-71.

before they ever enter the Bayway hydrotreater.[223] Those summary judgment arguments and supporting evidence are fixed; Magema cannot enlarge them here. *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 113 (5th Cir. 2010).

Accordingly, had the court been laboring under the correct claim construction, it must have found no issue of fact that Bayway was noninfringing because its feed lacked fractions that do not boil or vaporize. Indeed, the court denied summary judgment *solely* because it "decline[d] [Phillips 66]'s invitation to revise the construction of HMFO to include fractions that do not boil or vaporize."[224] The district court's erroneous failure to grant summary judgment provides an independent basis for affirmance here. (Likewise, no reasonable jury could have found infringement at Bayway had they been properly instructed about the legal meaning of HMFO,[225] which is what the summary judgment inquiry is meant to determine. Either way, no remand should follow.)

---

[223] Appx1878-80, ¶¶12, 15.

[224] Appx0061; Appx0065.

[225] Appx0672, Appx1122 (reurging claim construction error in jury instructions and JMOL).

**IV.   The District Court's Erroneous Exclusion Of Actual Flashpoint Data Provides An Alternative Grounds For Affirmance.**

Another alternative ground for affirmance is the court's erroneous exclusion of dispositive evidence that, had the jury seen it, could not have led otherwise than to a verdict of noninfringement.

*Eight months* before trial, Phillips 66 moved to supplement the record with evidence of flash point samples from a newly built sample station located after Drum D-101.[226] That evidence went to a crucial liability issue: the feedstock flashpoint was the only disputed element of ISO 8217 compliance at Bayway.[227] And because it was undisputed at trial that the flashpoint of feedstock *prior* to Drum D-101 was noninfringing—based on flashpoint samples Phillips 66 had long since produced[228]—"the question whether Drum D-101 affects the flash point of the Bayway hydrotreater's feed"[229] was determinative. To answer that question, Magema had a single flashpoint theory, and a single way to prove its theory, at trial: that D-101 should increase the fuel's flashpoint

---

[226] Appx0018.

[227] Appx0063; Appx0926 (25:18-26:4).

[228] Appx2075; Appx2077; Appx2079; Appx2080; *see* Appx1008 (108:7-18).

[229] Appx0069.

to infringement levels, as shown by its Riazi estimate formula.[230] By showing conclusively that the post-D101 flashpoint actually remained below 140 degrees, the samples not only proved noninfringment for the time period after they were taken but conclusively proved the unreliability of Magema's Riazi model for the entire period of infringement.[231]

Yet the court denied the motion to supplement the record with the flashpoint samples, merely so as not to amend the scheduling order.[232] And when Phillips 66 urged in pre-trial proceedings that the samples be admissible at trial, the court refused and excluded the samples altogether.[233] The resulting trial was a bizarre charade of Magema arguing infringement based on Riazi flashpoint estimates, and Phillips 66 disputing the reliability of those estimates, when everyone (except the jury!) had in their pockets the actual flashpoint *measurements* that proved noninfringment and proved Riazi was not capable of accurately estimating flashpoint.

---

[230] Appx0964 (177:9-178:2); Appx0966 (189:2-9); Appx0991 (40:1-4).

[231] Appx2081-83.

[232] Appx0032.

[233] Appx0618; Appx0814 (1-7).

That the court took this drastic step merely to avoid extending the discovery deadlines[234] is an abuse of discretion. Rather than assess the real importance of the evidence, the court merely repeated its unwillingness to extend case deadlines."[235] Later, the court excluded the evidence from trial without further explanation.[236] No reason justified trying the case on estimates known to be wrong when the true evidence was available, and to have done so on a dispositive issue undermined Phillips 66's substantial rights. *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1093–95 (5th Cir. 1994) (finding abuse of discretion in exclusion of evidence and reversing verdict).

---

[234] Appx0032.

[235] Appx0028.

[236] Appx0814 (5-7).

## <u>CONCLUSION</u>

This Court should affirm the district court's judgment. Any remand should be limited to Bayway; should permit the court to reconsider its new trial order; and should correct the errors set forth in Issues 3 and 4 herein.

Dated: May 22, 2024

Respectfully submitted,

/s/ *Denise L. Drake*

Charles B. Walker, Jr.
Reagan Brown
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5203
charles.walker@nortonrosefulbright.com

Denise L. Drake
Charles M. Rosson
GIBBS & BRUNS LLP
1100 Louisiana Street,
Suite 5300
Houston, Texas 77002
(713) 751-5232
ddrake@gibbsbruns.com

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1) because it contains 13,835 words, excluding the parts of the brief exempted by Federal Circuit Rule 32(b)(2) and Rule 32(f) of the Federal Rules of Appellate Procedure.

2. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font.

Dated: May 22, 2024              /s/ *Denise L. Drake*
                                 Denise L. Drake