2024–1342

# United States Court of Appeals for the Federal Circuit

MAGĒMĀ TECHNOLOGY LLC,

*Plaintiff–Appellant*

v.

PHILLIPS 66, PHILLIPS 66 CO., and WRB REFINING LP,

*Defendants–Appellees*

Appeal from the United States District Court for the Southern District of Texas in Case No. 4:20–CV–02444, Judge Sim Lake

## REPLY BRIEF OF PLAINTIFF–APPELLANT MAGĒMĀ TECHNOLOGY LLC

John R. Keville
Robert L. Green
**SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
700 Louisiana St.,
Suite 2750
Houston, Texas 77002
Tel.: (713) 431–7117
Fax: (713) 431–7024

Miranda Jones
Jamie McDole
Michael D. Karson
**WINSTEAD PC**
2728 N. Harwood St.
Suite 500
Dallas, Texas 75201
Tel.: (214) 745–5400
Fax: (214) 745–5390

June 24, 2024

*Attorneys for Plaintiff–Appellant*

— 1 —

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4(a)(1), counsel for the Plaintiff-Appellant Magēmā Technology LLC certifies the following:

1.    The full name of every party of amicus represented by me is:

Magēmā Technology LLC

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me:

None

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.    The names of all law firms and the partners or associates that have appeared for the party in the district court and who are not already listed on the docket for the current case are:

WINSTEAD PC
Miranda Y. Jones
Jamie H. McDole
Michael D. Karson

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
John R. Keville
Robert L. Green

Dated: June 24, 2024

*/s/ Miranda Y. Jones*

Miranda Y. Jones
Jamie H. McDole
Michael D. Karson
WINSTEAD PC
2728 N. Harwood St., Suite 500
Dallas, Texas 75201
Tel.: (214) 745–5400
Fax: (214) 745–5390

John R. Keville
Robert L. Green
SHEPPARD, MULLIN,
RICHTER &
HAMPTON, LLP
700 Louisiana St., Suite 2750
Houston, Texas 77002
Telephone: (713) 431–7117
Facsimile: (713) 431–7024

*Attorneys for Plaintiff–Appellant*
*Magēmā Technology LLC*

## TABLE OF CONTENTS

TABLE OF ABBREVIATIONS ..................................................................vii

INTRODUCTION .............................................................................. 1

ARGUMENT .................................................................................. 12

    I.    Phillips Does Not Contest the Basis of the District Court's
        Finding of Prejudice ............................................................... 12

    II.   Because Magēmā Timely Objected, the Proper Standard of
        Review is Abuse of Discretion .............................................. 13

        A.    Magēmā's Objections Were Sufficient to Preserve the
             Error It Appeals and Were Not Waived....................... 13

        B.    The District Court Abused Its Discretion in Finding
             Phillips' Prejudicial Noninfringement Theory Did
             Not Affect the Outcome of the Case Due to Phillips'
             Two Other Arguments. ................................................. 17

    III.  Phillips Provides No "Reasonable Certainty" that the Jury
        Was Not Influenced by Phillips' Improper and Prejudicial
        "Actual Testing" Theory ........................................................ 22

    IV.   Phillips Does Not Dispute It Argued Claim Scope to the
        Jury ....................................................................................... 31

    V.    Phillips' Proffered Alternative Grounds for Affirmance
        Should Be Rejected .............................................................. 34

        A.    The District Court's Construction of HMFO was
             Proper. .......................................................................... 34

        B.    The Court's Exclusion of Phillips' Untimely
             Sampling and Testing Evidence of Its Changed
             Process is Irrelevant and Does Not Support
             Affirmance. ................................................................... 35

CONCLUSION ........................................................................36

CERTIFICATE OF COMPLIANCE .......................................38

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*ATD Corp. v. Lydall, Inc.*,
159 F.3d 534 (Fed. Cir. 1998) ............................................................... 16

*Avid Tech., Inc. v. Harmonic, Inc.*,
812 F.3d 1040 (Fed. Cir. 2016) ............................................................ 27

*Conway v. Chem. Leaman Tank Lines, Inc.*,
525 F.2d 927 (5th Cir. 1976) ................................................ 16, 17, 20

*Freshub, Inc. v. Amazon.com, Inc.*,
93 F.4th 1244 (Fed. Cir. 2024) ............................................................ 15

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) .................... 25

*Inline Plastics Corp. v. Lacerta Group, LLC*,
97 F.4th 889 (Fed. Cir. 2024) .............................................................. 27

*Jamison Co., Inc. v. Westvaco Corp.*,
530 F.2d 34 (5th Cir. 1976) .................................................................. 24

*Learmonth v. Sears, Roebuck & Co.*,
631 F.3d 724 (5th Cir. 2011) ............................................................... 30

*Muth v. Ford Motor Co.*,
461 F.3d 557 (5th Cir. 2006) .................................................. 23, 24, 25

*Network–1 Techs., Inc. v. Hewlett–Packard Co.*,
981 F.3d 1015 (Fed. Cir. 2020) ........................................................... 23

*O2 Micro v. Beyond Innovation Tech. Co., Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008) ..................................................... 32, 34

*RSBCO v. United States*,
No. 23-30062, 2024 WL 2966083 (5th Cir. Jun. 13, 2024) ................ 24

*Smith v. Transworld Drilling Co.,*
  773 F.2d 610 (5th Cir. 1985) ................................................................ 30

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,*
  895 F.3d 1304 (Fed. Cir. 2018) .......................................................... 26

*Uniloc USA, Inc. v. Microsoft Corp.,*
  632 F.3d 1292 (Fed. Cir. 2011) .......................................................... 15

*United States v. Castillo,*
  430 F.3d 230 (5th Cir. 2005) ............................................................ 14

*Westbrook v. Gen. Tire & Rubber Co.,*
  754 F.2d 1233 (5th Cir. 1985) .......................................................... 31

## Rules

Fed. R. Evid. 103(a) ................................................................ 15

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| IMO Mode | The mode of Bayway operation that produced low sulfur fuel oil |
| ISBL | inside the battery limits (i.e., inside the boundaries of a processing unit of a refinery) |
| Magēmā | Magēmā Technology LLC |
| OSBL | outside the battery limits (i.e., outside the boundaries of a processing unit of a refinery) |
| Phillips | Phillips 66, Phillips 66 Co., and WRB Refining LP, collectively |

## INTRODUCTION

Phillips' improper and prejudicial noninfringement theories require a new trial. Phillips succeeded in withholding production of samples based on its representation that calculations of physical properties were sufficient. After discovery closed, Phillips seized on Magēmā's lack of samples, arguing the claims required actual testing of samples. Despite having decided the claims did not require actual testing against Phillips as a matter of law, the district court did not prevent Phillips from presenting its actual testing noninfringement theory to the jury and refused to provide a curative instruction. After trial, the court agreed Phillips' actual testing theory was improper and prejudiced Magēmā. Nonetheless, it denied a new trial.

This appeal presents a general noninfringement verdict wherein the jury was told it could rely on any one of Phillips' three noninfringement theories. The district court found one of those theories defective (Phillips' actual testing noninfringement theory) yet did not grant a new trial. Because the prejudice caused by Phillips' actual testing theory was not harmless and this Court cannot be reasonably certain that

the jury did not rely on a legally erroneous noninfringement theory, a new trial is warranted.

Unbelievably, Phillips now argues as an alternative ground of affirmance (at 75) that "[n]o reason justified trying the case" on calculations when actual testing of (untimely produced) samples was available. But this was Phillips' own doing! Phillips had unilateral control over access to testing and sampling. Magēmā compelled the ISBL feed samples, Phillips refused, and the district court was persuaded by not to compel Phillips based on its assertions of safety concerns and costs.

Phillips did not offer to produce ISBL feed samples at any point during numerous scheduling extensions spanning over a year that followed. Phillips waited until **after** all discovery was closed and **after** dispositive motions were fully briefed—mere months before pretrial—to offer the ISBL feed samples. For Phillips to now argue (at 15, 74) that the trial should have focused on the ISBL feed samples that Magēmā originally sought and Phillips staunchly refused to produce is beyond the pale.

Magēmā could speculate as to several prejudicial reasons Phillips waited so long to make its production, given installing the sample station

was simple and allegedly dispositive of Magēmā's infringement theory. But it will refrain, except to point out two things. First, Phillips' timing denied Magēmā the opportunity to take discovery around these samples, leaving numerous questions unanswered. Second, Phillips ceased operating its IMO mode of the Bayway Refinery (changing its feed) before trial without explanation, and Magēmā did not accuse the new mode. Yet Phillips includes flashpoint data collected *after* the change occurred in its proffer as representative of IMO mode of operation (which it is not). Appx2081-86. The absence of any marked difference in the flashpoint data suggests that the entire data set may have been impacted by this change, but again, there was no discovery around this untimely data. *Id.*

Phillips had a clear litigation strategy from the outset: begin with the end in mind. Appx0852 (85:22-86:9). Phillips began with Magēmā's burden to prove infringement. *Id.* Limiting sample collection to *only* its desired OSBL feed meant Phillips could not only argue at trial that Magēmā's ISBL feed was not relevant (i.e., it's "prior to hydroprocessing" theory), but also that Phillips could argue there was a failure of proof as to the ISBL feed's physical properties because Magēmā would have no access to sample and test from that location (i.e., its "actual testing"

theory). When opposing Magēmā's motion to compel the production of ISBL feed samples, Phillips represented calculations of physical properties would sufficiently establish the physical properties of ISBL streams. At trial, however, Phillips' noninfringement theory required actual testing to the exclusion of all other evidence, including calculations and modeling. Phillips restricted the samples and testing to OSBL samples to argue a red herring: it tested the flashpoints of thousands of (OSBL) samples to show it does not infringe. Phillips also knew that its OSBL samples were *not* representative of the physical properties of the ISBL feed to the hydrotreater reactor, which was the feed that formed the basis of Magēmā's infringement theory.

Phillips now tries to argue (at 10) that its position at the motion to compel stage was merely other calculations (not Riazi) were acceptable. But this does not address the core problem: does the claim language encompass calculations or not. If calculations are insufficient proof of infringement *per se*—as Phillips argued at trial—then a jury would not need to consider the reliability of the calculations. If, however, the claims can be proven infringed through calculations, as Magēmā argued, questions of reliability come into play. Phillips' actual testing theory is

— 4 —

legally erroneous, contrary to the law of the case, inconsistent with Phillips' prior positions, and improperly resulted in submission of disputed questions of claim scope to the jury.

After trial, the district court recognized the prejudice that Phillips' actual testing theory caused and recognized that Magēmā had properly preserved its objections to this noninfringement theory. Under the law applicable to general verdicts where multiple independent noninfringement theories were presented to the jury, a new trial is warranted where a reviewing court cannot determine whether the jury based its verdict on a sound or unsound theory of the case. That imperative is even more apparent here, as the circumstances demonstrate that the jury based its verdict on Phillips' prejudicial actual testing theory. The jury's verdict across all four claims in two patents and two refineries indicates that Phillips' actual testing theory was the basis of the jury's verdict, as it was the only theory that cut across all claims against both refineries.[1] Phillips discussed this theory in both its opening and closing presentations (even after the district court admonished

---

[1] For purposes of simplifying the issues on the appeal, Magēmā is only appealing as to two claims in one patent and against one refinery. Still, the jury's overall verdict indicates which theory influenced its decision.

Phillips to drop it). Nevertheless, the district court erred in its application of what Phillips refers to (at 37-38) as "harmless error gloss" to deny a new trial based on a conclusion that this legally erroneous noninfringement theory did not impact the outcome of the case. Here, there is "reasonable certainty" that Phillips' actual testing theory did *in fact* influence the jury's verdict, and a new trial is warranted.

Even if Phillips' other noninfringement theories could serve as an explanation for the jury's verdict, both of those theories require improperly sending disputed issues of claim scope to the jury to resolve. Phillips does not defend its interpretations as providing the proper plain and ordinary meanings of "prior to hydroprocessing" or "merchantability." Nor does it contend that the jury was not asked to resolve disputed claim scope. Instead, Phillips offers excuses to justify its improper and prejudicial arguments. But each excuse only further exposes the significant prejudice to Magēmā, requiring a new trial.

## RESPONSE TO PHILLIPS' STATEMENT OF FACTS

Phillips attempts (at 7) to weave a version of the facts to suggest that Magēmā was moving the infringement target and used the denial of the motion to compel samples against Phillips as a "sword." In doing so,

Phillips engages in revisionist history, mistaking basic facts indisputable in the record (e.g., dates and ordering of events that speak for themselves) and planting inaccurate impressions. The district court already rejected Phillips' rewriting of the timeline, stating "Defendants' assertion that they installed a sampling station after Drum D-101 to safely test for flashpoint after Magēmā injected and then expanded its drum D-101 infringement theory following the close of discovery ***is not supported by the record***." Appx24; *see also* Appx4-15 (summarizing the procedural history).

In trying to craft this narrative, Phillips expressly misstates (at 6) the order of events: "***After serving expert reports***, Magēmā ***moved to compel*** feedstock samples from new locations inside Bayway's battery limits." The dates—as summarized in the district court's order—show Phillips' ordering to be incorrect: after lengthy but unproductive negotiations with Phillips, Magēmā's first motion to compel was filed on **September 22**, 2021. Appx0005. Magēmā's first expert reports were served on **October 7**, 2021. Appx0006. Later Magēmā served supplemental expert reports as Phillips continued to produce compelled information. Appx0011-14. For example, Phillips started testing

flashpoints of its OSBL feed more than a year after the case was filed, in August 2021. Appx0408 (82:8–15). Before August 2021, Phillips produced fewer than a handful of data points with flashpoint. Appx0907 (198:21-199:1). Phillips waited to produce its testing of the OSBL feed's flashpoint until *after* Magēmā's opening technical briefs were due. Appx1977 (Phillips "started producing the initial flashpoint results in October 2021.").

Phillips' recitation of the facts (at 6) is also misleading insofar as it implies Phillips built its new ISBL feed sampling station in response to the November 2021 denial of Magema's motion to compel. These two events were not connected. Almost a year after that denial, in October 2022, Phillips told the district court it had "recently installed a new sample station." Appx18. Phillips' supporting declaration explained that it "had evaluated adding this sample station *starting in early September 2022*"". Appx2158-62. Notably, Magēmā filed its motion requesting application of Section 295's burden shifting mechanism on *September 8*, 2022.

Phillips (at 6) contends that its "samples came from [OSBL] of the facility (before the feedstock hit any equipment), because that was the

area *both parties* considered relevant to flashpoint." (emphasis added). But its only citation supporting this statement is Phillips' own brief. Magēmā never agreed that the relevant sampling and testing location was Phillips' OSBL location.

Further, Phillips asserts (at 6) that "Magēmā had not clearly contended that equipment within the Bayway facility materially changed flashpoint, such that testing feedstock at ISBL locations and downstream from the 'fresh feed' would be fundamentally different than testing the fresh feed itself." Yet Phillips itself (at 7) contradicts this characterization when it acknowledges that Magēmā sought from the outset the properties of the combined feed (which is ISBL), *not* the fresh feed (from OSBL). *See also* Appx0927 (29:1-15), Appx927-28 (32:25-33:3) ("The fresh feed product or characteristics here are not representative of what's going into the hydrotreater. That's right, correct? A. That's correct."); Appx965 (182:15-183:17).

Phillips contends (at 7) that at the motion to compel stage its position was merely *other* calculations were acceptable. Specifically, Phillips admits (at 7) that it "specified that the properties of the combined stream *could be determined from the known properties* of the two

constituent streams." But this is Magēmā's point (at 20-21). The way to determine the non-linear property of flashpoint from constituent streams is the Riazi calculation. Thus Phillips implicitly concedes (at 7) it told the district court at the time of the motion to compel such calculations could be used to establish the physical properties of the ISBL feed.

To further explain this important point, the parties do not dispute that certain properties (including viscosity/CCAI and flashpoint) are **_non-linear_** properties, meaning that the property of the combined stream cannot be linearly calculated based on the relative proportions of two constituent streams. Appx927 (29:11-15). For non-linear properties, more complicated calculations are required. For flashpoint, one such calculation is the Riazi calculation. As Magēmā explained (at 22-23), its Riazi calculations use other data Phillips produced related to distillation of its OBSL feed samples. (Appx1240 at 3.114.) The most recent version of the ISO 8217 standard released earlier this year expressly cites with approval to Riazi (Appx1189–1257), describing it as "[a]n ASTM publication was selected as _the most established and applicable guidance document_ for the petroleum industry to base its approach on the

characterization of marine fuels." (Appx2165, Appx2010, Appx2213) (emphasis added).

Phillips contends (at 11) that Magēmā gave the "misimpression that Phillips never provided the very samples Magēmā had excluded." There is no misimpression. ***Phillips excluded*** the ISBL samples from the case by refusing production and opposing Magēmā's motion to compel during the discovery period when Magēmā sought those samples. That Phillips offered the ISBL samples after fact discovery closed, after expert discovery closed, and after dispositive motions were briefed was effectively the same as ***never*** producing them. It was manifestly unfair to permit Phillips to argue that actual testing was required by the claims and Magēmā had no actual testing, while simultaneously preventing Magēmā from explaining the untimeliness of the samples at trial. Further, Phillips' changed from low sulfur fuel oil production (IMO mode) to diesel production at some point after discovery closed but before trial, thereby suggesting that the ISBL sample testing it ultimately produced was not reflective of the IMO mode accused of infringement.

# ARGUMENT

## I. PHILLIPS DOES NOT CONTEST THE BASIS OF THE DISTRICT COURT'S FINDING OF PREJUDICE

In its response, Phillips does not argue that the district court's finding of prejudice (Appx0111-12) was wrong or that Phillips' actual testing theory was not prejudicial to Magēmā. Phillips contends (at 36), however, that the district court merely meant that Phillips' arguments were "adverse to the other side" or "introduced against Magēmā." This explanation is implausible in view of the district court's statements. Specifically, the district court found that such arguments relating to Phillips' "actual testing" theory were both "improper and prejudicial":

> the court concludes that Defendants' arguments regarding "actual testing data" were . . . **improper and prejudicial** to Magēmā *because* in response to Magēmā's motion to compel actual samples, Defendants argued that Magēmā did not need actual samples and could, instead, prove infringement with estimates calculated from otherwise available data.
>
> Nevertheless, the court is not persuaded that **the prejudice *caused* by Defendants'** argument regarding testing of actual samples warrants a new trial . . . .

Appx0111-12 (emphases added). The district court concluded that such arguments were improper and prejudiced Magēmā. It was *not* merely indicating that Phillips' arguments were "introduced against Magēmā," as Phillips argues (at 36). The words "prejudicial" and "prejudice" as used

— 12 —

in the above-quoted opinion are synonymous with "harmful" and "harm." In other words, the district court recognized that Phillips' improper and prejudicial actual testing theory should not have been presented to the jury. Phillips' claims otherwise strain credulity. Regardless, Phillips does not—and cannot—dispute that its actual testing theory contradicts its own pretrial evidentiary positions—on which it prevailed. Phillips maintained (at 5-6) that it need not produce ISBL feed samples because calculations using Phillips' provided OSBL feed data were sufficient to determine the physical properties of the ISBL feed. The district court's failure to exclude Phillips' improper and prejudicial noninfringement theory on Magēmā's objection and its failure to provide the requested curative instruction are prejudicial errors that affected the outcome of trial.

## II. BECAUSE MAGĒMĀ TIMELY OBJECTED, THE PROPER STANDARD OF REVIEW IS ABUSE OF DISCRETION

### A. Magēmā's Objections Were Sufficient to Preserve the Error It Appeals and Were Not Waived.

Phillips (at 19-25) leans into the argument that Magēmā did not preserve its objections to argue that a stricter "plain error" standard of

review should apply. In doing so, it mischaracterizes the legal standard to preserve error and ignores facts contrary to its desired conclusion.

*First*, the district court concluded the error was sufficiently preserved (Appx0111), and Phillips did not attempt to establish any error in that finding. In fact, Phillips ignores the district court's conclusion that Magēmā had sufficiently preserved its objection to Phillips' improper and prejudicial noninfringement theory. Phillips argues (at 19) that Magēmā "never asked the court to **exclude** anything." On the next page, Phillips quotes the court (at 20) as saying "I'm not going to **exclude** this during opening statement." The court understood Magēmā to be asking for the exclusion of Phillips' improper and prejudicial noninfringement theory, even if Phillips did not. "With respect to the preservation of error, this court has held that the purpose of a contemporaneous objection is to enable the district court to correct its error in a timely manner." *United States v. Castillo*, 430 F.3d 230, 242 (5th Cir. 2005). Magēmā's objections and motion for a curative instruction here gave the district court opportunities to correct the error. Thus the Court should reject Phillips' contrary arguments.

*Second*, Phillips mischaracterizes Magēmā's objection before opening statements as a "pretrial objection" to shoehorn the facts of this case into the facts of *Freshub, Inc. v. Amazon.com, Inc.*, 93 F.4th 1244, 1251 (Fed. Cir. 2024). In *Freshub*, this Court found an objection only presented in a motion *in limine* was not sufficiently preserved. *Id.* Unlike *Freshub*, Magēmā's objection was made on the first trial day before opening statements and is part of the trial transcript. *See* Appx0846 (5:3-13, 6:4-16). Requiring Magēmā to object again minutes later during opening statements after the district court's express ruling that it was not going to exclude Phillips' theory would serve no purpose. The Court should reject Phillips' mischaracterization of Magēmā's objection as akin to an objection to a motion *in limine*.

*Third*, Phillips resorts to an argument (at 21) that Magēmā's questioning of witnesses and introduction of the ISO 8217 standard as evidence at trial somehow waived the properly preserved objection. The law does not require Magēmā to leave Phillips' noninfringement theory to which it objected unaddressed or to repeatedly and contemporaneously object to preserve the error. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319 (Fed. Cir. 2011) (citing FED. R. EVID. 103(a)). Phillips tries to

paint Magēmā's objections as delayed over the trial days (e.g., "days passed") (at 21) but the record shows that Magēmā objected repeatedly, and timely requested a curative instruction, all during trial. Again, under Phillips' logic, a party presented with an adverse ruling would be rendered mute, unable to present evidence notwithstanding the adverse ruling without somehow waiving its ability to challenge that adverse ruling. The district court permitted Phillips to introduce its improper and prejudicial noninfringement theories over Magēmā's objections and request for a curative instruction. Magēmā was forced to litigate on that playing field. Magēmā's objections to Phillips' "actual testing" theory were properly preserved and not forfeited. Therefore, this Court should review the district court's denial of a new trial for an abuse of discretion.

Even if this issue was evaluated under a "plain error" standard, Magēmā presented arguments demonstrating Phillips' improper and prejudicial noninfringement theory affected Magēmā's substantial rights because it affected the outcome of the case. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 549 (Fed. Cir. 1998) ("In general terms, the test of whether a substantial right of a party has been affected is whether the error in question *affected the outcome of the case*."); *Conway v. Chem. Leaman*

*Tank Lines, Inc.*, 525 F.2d 927, 929–30 (5th Cir. 1976). And the error Magēmā identifies is clear. At trial, the district court recognized that it had decided against Phillips on the legal issue of whether the claims' scope required actual testing (Appx1064 (239:8-17)) (i.e., the claims did not require actual testing). But the district court nevertheless allowed Phillips to present a contrary legal conclusion (the claims require actual testing) to the jury as establishing noninfringement and denied corrective instruction.

### B. The District Court Abused Its Discretion in Finding Phillips' Prejudicial Noninfringement Theory Did Not Affect the Outcome of the Case Due to Phillips' Two Other Arguments.

Phillips argues (at 8-9, 39) the district court properly concluded its actual testing theory did not affect the outcome of the case because of "two predicate arguments necessary for the actual-testing argument to enter play." The arguments to which Phillips refers are two theories related to different claim limitations: merchantability and "prior to hydroprocessing." *Id.* Neither argument explains the jury's noninfringement verdict.

*First*, the merchantability limitation could not have served as a separate basis to explain the jury's verdict. Only one of the four claims

tried included a merchantability limitation. Thus something other than merchantability was the basis of the jury's noninfringement finding. Phillips provides no suggestion as to how merchantability could explain the jury's verdict.

As Magēmā explained (at 43-45), the merchantability theory was also based on Phillips' improper interpretation of the term as including a second, unwritten-but-stricter, viscosity requirement that went beyond the limits imposed by ISO 8217. There is no such requirement found in the claim or in the specification. Even if the Court accepts Phillips' improper interpretation of "merchantability," this argument improperly contravened the district court's discovery rulings in the case. Because it did not produce complete testing for all ISO 8217 properties, Phillips was ordered to stipulate as to certain properties it would not contest. Appx0011-13; Appx324-26. The viscosity of Bayway's feed was one such property that Phillips measured fewer than a handful of times. Appx0372-76 (46:24–50:21). Phillips thus stipulated that the Bayway feed met ISO 8217's viscosity requirement. Appx0324-25; Appx0636-37. Having stipulated as to viscosity, Phillips used merchantability at trial as an end-run-around the district court's evidentiary rulings.

*Second*, Phillips' "prior to hydroprocessing" noninfringement theory was also improper and does not independently explain the jury's noninfringement verdict. Like merchantability, Phillips' "prior to hydroprocessing" theory did not apply to all tried claims. This term was only found in two of the four claims covered by the jury's verdict. The only noninfringement theory that applied to all four claims was Phillips' actual testing theory, whether of flashpoint using Riazi for Bayway or for viscosity and CCAI for the second refinery, Wood River (not appealed).

The claims do not support Phillips' argument that "prior to hydroprocessing" required testing OSBL feed samples. Hydroprocessing occurs in the reactor of the unit; thus, the feed that must be sampled is the feed to the reactor. Appx0989 (31:19–32:2). In fact, all three of the examples in the patent provide exemplary feed properties measured immediately prior to the pilot reactor, not before other ancillary equipment. Appx0150-53; Appx1021 (159:22-160:23). Phillips' expert agreed that the word "feedstock" did not appear expressly in the claims, but he read it into "marine fuel prior to hydroprocessing . . . ." Appx1057 (162:11-19). He testified that after consulting dictionaries and technical treatises, he determined this phrase must mean "feedstock *to the unit*"

as opposed to the reactor. Appx1057 (162:20-164:16). The patent, however, describes the stream as "feedstock" until it is mixed with the activating gas (here, hydrogen) prior to the reactor at which point the Feedstock HMFO becomes a Feedstock Mixture. Appx0147-48. This occurs before the reactor but after the Oil Feed Surge Drum and other equipment. *Id.* The patent expressly states the "*Feedstock HMFO* (A) is withdrawn from the Oil Feed Surge Drum (D)" (Appx0147), thereby indicating that the stream is still considered "feed" after it leaves a surge drum (or vapor disengaging drum D-101, as applied to Phillips Bayway refinery). In view of its flawed legally flawed interpretation, Phillips' "prior to hydroprocessing" argument likely would have been rejected by a court applying claim construction precedent as opposed to a jury unaware of such rules.

Not only are Phillips' other noninfringement theories inadequate to explain the jury's noninfringement verdict across all claims and refineries, these other theories are likewise legally flawed as rooted in disputes over claim scope that should not have been submitted to the jury to resolve in the first place. Here the district court's denial of Phillips' motion for judgment as a matter of law demonstrates there was not an

absence of evidentiary support of any claim element necessary to prove infringement. Appx1080 (51:15-20, 52:2-7). Further, most claim elements were already stipulated by Phillips (Appx0636-37) or were the subject of the district court's summary judgment finding in Magēmā's favor (Appx0077 (concluding Magēmā "is entitled to partial summary judgment that the Bayway Hydrotreater's product is a Table 2 Compliant HMFO."))

Phillips suggests (at 12) that "verdict could not have turned on whether actual testing was required *instead of Riazi estimates*, because that issue affected only one of the two refineries at issue (Bayway)." (emphasis added). But the actual testing theory—not Riazi calculations—was at issue for the second refinery too. There, Phillips' samples were also of "fresh feed" OSBL samples and was not representative of the feed to the reactor. Appx0927-28 (32:25-33:3); Appx0991 (38:11-39:22); Appx0992 (43:3-11). The testimony showed that there were differences in the physical properties between the OSBL feed and ISBL feed on a different (non-linearly calculated) property: viscosity. Appx0926-27 (26:9-13, 27:22, 29:1-15). Thus unlike the Riazi calculations and related flashpoint evidence—which only relate to Bayway—the

actual testing theory touched on both refineries. This further shows a failure of proof related to the Riazi calculations or flashpoint evidence also could not fully explain the jury's verdict because the jury likewise found the same claims not infringed by the Wood River refinery. Phillips' actual testing theory simply did not allow for the calculation of physical properties (of Riazi flashpoint for Bayway and for viscosity for the second refinery, Wood River). Only the actual testing theory itself touched all four claims and both refineries.

This Court should not find these fundamentally flawed other noninfringement theories that were improperly submitted to the jury somehow obviate the harm of Phillips' improper and prejudicial actual testing theory.

## III. PHILLIPS PROVIDES NO "REASONABLE CERTAINTY" THAT THE JURY WAS NOT INFLUENCED BY PHILLIPS' IMPROPER AND PREJUDICIAL "ACTUAL TESTING" THEORY

Phillips dismisses (at 37-38) Magēmā's argument and case law pertaining to general verdicts, and relies on strategically-selected parts of cases that do not support the propositions it asserts. At trial, Phillips presented three separate noninfringement theories relevant to this appeal: "actual testing," "merchantability," and "prior to

hydroprocessing." These theories were not delineated in the general verdict form related to infringement, rather infringement questions were delineated by claim. Appx0079-83. If this Court agrees that any of the three theories were legally erroneous, then a new trial is required. *See, e.g.*, *Network–1 Techs., Inc. v. Hewlett–Packard Co.*, 981 F.3d 1015, 1026 (Fed. Cir. 2020). Phillips criticizes (at 37) Magēmā for relying on a Federal Circuit case not a Fifth Circuit case. But Magēmā cited the Federal Circuit case as demonstrating how the general verdict rule works in the context of patent infringement cases. *See id.* at 1025-26. Moreover, *Network–1 Technologies* involved an appeal from the Eastern District of Texas (*i.e.*, Fifth Circuit) and applied Fifth Circuit precedent to issues governed thereby.

Relying on *Muth*, Phillips implies (at 37) that the Fifth Circuit does not follow the rule articulated in *Network–1 Technologies*, asserting "[d]ecades of Fifth Circuit precedent refute Magēmā's legal position anyway." (citing *Muth v. Ford Motor Co.*, 461 F.3d 557, 564 (5th Cir. 2006)). Not so. *Muth* itself belies this argument:

> when a case is submitted to the jury on a general verdict, the failure of evidence or a legal mistake under one theory of the case generally ***requires reversal*** for a new trial because the

> reviewing court cannot determine whether the jury based its
> verdict on a sound or unsound theory.

*Muth*, 461 F.3d at 564 (emphasis added). Phillips points to (at 37-38) language in *Muth* about the Fifth Circuit engrafting a "harmless error gloss" on this presumed harm rule for general verdicts. But the "harmless error gloss" to which Phillips refers did not eradicate the general rule. The Fifth Circuit recently confirmed the rule, holding "[w]hen we 'cannot discover the exact basis' of the jury's verdict because 'the verdict is capable of comprehending any one of a number of theories of liability,' we **must** 'remand for a new trial[.]'" *RSBCO v. United States*, No. 23-30062, 2024 WL 2966083, at *7 (5th Cir. Jun. 13, 2024) (quoting *Jamison Co., Inc. v. Westvaco Corp.,* 530 F.2d 34, 37 (5th Cir. 1976)). Here, Fifth Circuit precedent requires a remand for a new trial.

The "harmless error gloss" on the presumed harm rule, as explained in *Muth*, puts the burden on establishing that an error was *harmless*, not on proving *harm*. The *Muth* court found an error harmless despite the applicability of the presumed harm rule because it was "totally satisfied" that the jury relied on a proper theory. *Muth*, 461 F.3d at 565. While it agreed that that *Muth* did not present sufficient evidence of a safer alternative design, a necessary element of Texas law on which Muth had

— 24 —

the burden," it found that theory played little role at trial and there was sufficient evidence of a proper theory. *Id.* at 565. In contrast, here, the "actual testing" theory was a prominent aspect of Phillips' case. In *Muth*, the issue was also one of sufficiency of evidence, which does not apply here. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ("We must set aside a general verdict if the jury was told it could rely on any of two or more independent legal theories, one of which was defective. . . . However, we will not set aside a general verdict 'simply because the jury might have decided on a ground that was supported by insufficient evidence.'") Phillips' two alternative theories are disputes of claim scope, which do not bear on the sufficiency of the evidence as to those limitations. The jury was not required to resolve disputes of claim scope in Phillips' favor. As Magēmā explained (at 42-47), the sufficiency of Magēmā's evidence is further supported by the district court's denial of Phillips' motion for judgment as a matter of law. Appx1080 (51:15-20 (denying JMOL on the merchantability limitation and ISO 8217 compliance); Appx1080 (52:2-7 (denying JMOL of noninfringement generally).

Having lost its primary claim construction argument on HMFO, Phillips sought to ambush Magēmā with unidentified plain and ordinary meaning interpretations that introduced requirements unsupported by the claims or specification. Phillips' proffered interpretations would have been rejected had they been properly raised during claim construction. Phillips proffered two weak alternative noninfringement arguments: *one* doesn't even apply to one of the two independent claims at issue here; the *other* applied to only two of the four claims in the jury verdict; and *both* are claim construction disputes that Phillips improperly argued to the jury, not an absence or failure of evidence. Phillips has pointed to no argument that would be sufficient to explain the jury's verdict.

Phillips further relies on *Texas Advanced*, in which this Court held:

> if a jury could find liability according to multiple theories, and one of them is [legally] erroneous, we **reverse** unless we can tell that the jury came to its decision using only correct legal theories. If it is impossible to tell whether a correct theory has been used, we reverse for a new trial.

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1316 (Fed. Cir. 2018). Phillips has identified no legally correct theory of noninfringement that supports the jury's verdict—much less shown that the jury came to its decision using *only* correct legal theories.

After the submission of Magēmā's principal brief, this Court decided *Inline Plastics Corp. v. Lacerta Group, LLC* which reaffirms the operation of harmless error gloss on the general verdict rule in patent infringement cases, holding: "[b]ecause there was no separate jury determination of noninfringement on a distinct ground, the error in the instruction governing this central dispute at trial would be harmless ***only if*** a reasonable jury ***would have been required*** by the evidence to [make the finding it made] even ***without the error***." 97 F.4th 889, 898–99 (Fed. Cir. 2024) (citing *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1047 (Fed. Cir. 2016)).

Here Phillips admitted that it was making this legal argument during trial. Appx1065 (241:16-17 (Phillips' counsel concedes: "we're also arguing that the standard requires you to use a test rather than any estimations."), 241:8-10 ("We've just said looking at the standard, you're not supposed to rely [on estimations]. That's the evidence. That is a matter of law.")). The district court recognized that it had decided the legal issue against Phillips. Appx1064 (239:8-17). But then the district court did nothing to correct Phillips' incorrect legal arguments to the contrary to the jury.

Phillips only response is to now characterize this noninfringement theory as "not central" (at 38) and as a "small part of the trial" (at 40). As Magēmā explained (at 26-27), however, this theory was Phillips' primary noninfringement argument and was repeatedly raised throughout trial. *See also* Appx1010 (113:8-13, 114:2-116:20). It was the focus of Phillips' opening and closing arguments. Appx0852-56 (86:7-9, 95:18-21, 97:5-6, 99:9-100:8, 102:16-17); Appx1084-86 (98:10-11, 98:23, 108:12-15). If "actual testing" was in fact a minor side issue, Phillips would not have continued to press it even after the district court instructed it not to do so in closing arguments.

Next, Phillips' argument (at 39-40) that its actual testing theory was cumulative to other evidence—such as the submission of the ISO 8217 standard itself—is also misplaced. Phillips analogizes (at 39-40) to cases involving the admission of improper evidence. But Magēmā contends the "actual testing" theory is an improper legal theory. Thus "cumulativeness" is not the issue; the issue is that Phillips presented a legally improper and prejudicial noninfringement theory to the jury. Even if the cumulativeness of the evidence was an issue—which it is not—there is nothing in the ISO 8217 standard itself that sets forth any

requirement for actual testing. And thus nothing about the submission of this evidence into the record made Phillips' actual testing argument cumulative of properly admitted evidence.

Magēmā could not put the actual testing theory in context, as Phillips argues (at 41). The district court told Magēmā: "So I don't want to hear anything from you. I don't want to hear the words 'Phillips has not produced test results.'" Appx1064 (239:23-240:1). Thus Magēmā was not permitted to explain to the jury why it did not have actual testing from the ISBL locations.

Phillips also contends (at 41) that the customary jury instruction that "statements of counsel are not evidence" somehow "mitigated any prejudice." Having withheld samples during discovery, Phillips was then permitted to present a noninfringement theory to the jury that the same evidence was *required* by the claim language and the alternative form of evidence (calculations of properties) was *per se insufficient*. This despite the fact that Phillips itself previously proposed that calculations were acceptable as the rationale to convince the district court not to require production of samples when Magēmā sought them. And there was no other source from which Magēmā could obtain these samples. Nothing

about the instruction Phillips cites "mitigates" the prejudice of this. And Magēmā was not permitted to present this context to the jury. None of Phillips' arguments should provide this Court with an iota of certainty that Phillips improper and prejudicial "actual testing" theory did not significantly influence the jury, much less the "reasonable certainty" required.

Phillips argues (at 30-35) that Magēmā did not contest the district court's manifest injustice determination, which insulates the decision from reversal. Not only did Magēmā expressly quote (at 41) the district court's manifest injustice conclusion, it explained that the district court based its conclusion that no manifest injustice occurred was a result of its (erroneous) conclusion that the actual testing noninfringement theory did not affect the outcome of the case. Appx0112-13. Phillips acknowledges (at 31) that a harmful (prejudicial) error is a sufficient basis to grant a new trial, but suggests (at 31-32) that a harmful error alone does not *require* a new trial, (citing *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir. 1985) and *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 731 (5th Cir. 2011)). Neither case supports such a conclusion. *Learmonth*, 631 F.3d 724, 732-33 (finding only improper

attorney argument but no prejudicial error). Rather the Fifth Circuit has held that "[w]hen this court is left with the perception that the verdict resulted from *prejudicial error*, deference [to the trial judge's discretion in denying a motion for a new trial] must be abandoned." *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1242 (5th Cir. 1985) (emphasis added).  In addition, neither of Phillips' cited cases addresses the rule pertaining to general verdicts involving multiple theories where one was improper and prejudicial. The district court's denial of Magēmā's motion for a new trial should be reversed, and this case should be remanded for a new trial.

## IV.  PHILLIPS DOES NOT DISPUTE IT ARGUED CLAIM SCOPE TO THE JURY

Because a remand is required as a result of the taint the improper and prejudicial "actual testing" theory alone had on the general verdict, Magēmā need not show all three of Phillips' noninfringement theories were legally erroneous to warrant a new trial. Nonetheless, Phillips argues that Magēmā is not entitled to a new trial because the jury could have reached its noninfringement verdict based on Phillips' other noninfringement theories, "prior to hydroprocessing" and "merchantability." Neither of these noninfringement theories can save

the general verdict, however, because both introduce further legal errors, requiring the jury to decide disputes of claim scope in violation of *O2 Micro v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1360-61 (Fed. Cir. 2008)

Regardless, Phillips does not dispute it argued claim scope to the jury. Phillips also does not contend that its alleged "plain and ordinary" constructions of those terms actually comport with a proper interpretation of those terms as used in the claims of the patents. Rather Phillips seeks (at 62) to blame Magēmā, arguing that it was "incumbent" on Magēmā to raise an issue that Phillips was actively seeking to conceal at the same time. But contrary to Phillips' argument, once Phillips revealed an intent to present the claim scope issue to the jury, Magēmā asked the district court to resolve the issue. Indeed, with respect to "compliant with ISO 8217:2017" the district court expressly concluded that whether the "standard requires you to use a test rather than any estimations" was "a legal issue for [the district court] to decide." Appx1065 (241:11-18); Appx. 1064 (239:16). But while the district court ruled in Magēmā's favor, it did not inform the jury of its resolution of the

legal dispute, casting the issue to the jury without guidance.[2] Appx1065 (242:11-13, 243:5-6).  And regarding "prior to hydroprocessing," Magēmā raised the claim scope issue in dispositive motions. Appx0472-76. While the district court concluded that the parties "vigorously disputed" (Appx0103-04) the scope of this claim term, it erroneously submitted this legal dispute to the jury as well.

Phillips tries to justify its improper argument of claim scope to a jury, unfettered by a court's reasoned and legally proper construction, by claiming that it only argued plain and ordinary meaning to the jury. But Phillips' attempt to camouflage its claim scope arguments as a dispute over the plain and ordinary meaning only highlights the issue. Even the district court concluded that the parties' argument presented "a legal issue for [the district court] to decide" (Appx 1064 (239:8-16)) and that the parties "vigorously disputed" (Appx0103-04) the scope of the claim. Thus, no matter how Phillips characterizes the dispute, it was still a dispute as to claim scope, and thus, the district court (1) should have

---

[2] Phillips repeatedly notes that neither party asked the Court to construe the term "compliant with ISO 8217:2017." The construction of that term was agreed (stipulated) by the parties, as Phillips acknowledges (at 47, 48, 50, 54.) Because it was agreed, Phillips should not have been permitted to give the term a different "plain and ordinary" meaning.

resolved the disputes; and (2) instructed the jury on the proper claim scope to guide the jury's deliberations as expressly requested by Magēmā. Appx1065 (242:1-13). Without both steps, the district court improperly presented a legal claim scope issue to the jury, thus requiring a new trial under *O2 Micro*.

## V. PHILLIPS' PROFFERED ALTERNATIVE GROUNDS FOR AFFIRMANCE SHOULD BE REJECTED

### A. The District Court's Construction of HMFO was Proper.

The district court's construction of HMFO was proper. Phillips proffers (at 64) an exceedingly narrow construction requiring materials that never boiled or vaporized. This would excluded almost all feeds in the refinery. In so arguing, Phillips ignores the express definition in the detailed description of the specification in favor of other language in the background section. Appx0243–45. Moreover, Phillips contends (at 5, 70) "Bayway processes *only distillate fuels* that have been fully vaporized before they ever reach the hydrotreater." Yet the testimony and documentary evidence at trial established that Phillips sells the product as low sulfur RMG 380 (a grade of residual marine fuel oil.) Appx1717; Appx1040 (96:9-22). Finally, even if Phillips' construction was adopted, remand for a new trial would be warranted—not affirmance.

**B.    The Court's Exclusion of Phillips' Untimely Sampling and Testing Evidence of Its Changed Process is Irrelevant and Does Not Support Affirmance.**

The law of the case supports exclusion of Phillips' untimely sampling and testing evidence, as Magēmā explained (at 56). Having won on its opposition of Magēmā's motion to compel samples, exclusion of Phillips' untimely samples was not erroneous. This is nothing more than a half-hearted attempt to undermine the evidentiary support for Magēmā's arguments. Phillips further admitted at trial that it changed the process used at the refinery. Appx0924 (18:1–20:17). Magēmā did not accuse the changed mode of operation of infringement. Appx0923 (15:16-23); Appx0988 (25:19-22). Thus Phillips untimely samples and testing of the ISBL feed for its changed process are irrelevant to whether the accused feed used for the IMO mode of operation infringed. Further, because Phillips only produced the samples after the close of fact and expert discovery, Magēmā was never given an opportunity to take discovery of its untimely sampling and testing. Phillips' properly excluded evidence cannot serve as a basis to affirm the district court's denial of a new trial.

## CONCLUSION

For the reasons set forth herein and in Magēmā's Principal Brief, Magēmā respectfully requests that this Court reverse the district court's denial of a new trial and remand this case for a new trial.

Dated: June 24, 2024                    Respectfully submitted,

*/s/ Miranda Y. Jones*
Miranda Y. Jones
Jamie H. McDole
Michael D. Karson
WINSTEAD PC
2728 N. Harwood St., Suite 500
Dallas, Texas 75201
Tel.: (214) 745–5400
Fax: (214) 745–5390

John R. Keville
Robert L. Green
SHEPPARD, MULLIN,
RICHTER &
HAMPTON, LLP
700 Louisiana St., Suite 2750
Houston, Texas 77002
Telephone: (713) 431–7117
Facsimile: (713) 431–7024

*Attorneys for Plaintiff–Appellant*
*Magēmā Technology LLC*

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Federal Circuit Rule 32(b), the undersigned certifies that this brief complies with the applicable type–volume limitations. Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2), this brief contains 6,952 words. This certificate was prepared in reliance on the word count of the word–processing system (Microsoft Office Word LTSC Professional Plus 2021) used to prepare this brief.

The undersigned further certifies that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Word 2021 in 14–point Century font.

June 24, 2024

Respectfully submitted,

*/s/ Miranda Y. Jones*
Miranda Y. Jones

*Attorney for Plaintiff–Appellant*
*Magēmā Technology LLC*