

Denise Drake
Partner
ddrake@gibbsbruns.com
713.751.5232

July 3, 2025

***Via CM/ECF***
Jarrett B. Perlow
Circuit Executive and Clerk of Court for the
U.S. Court of Appeals for the Federal Circuit
717 Madison Place NW
Washington, DC 20439

      Re:    *Magema Technology LLC v. Phillips 66*, No. 2024-1342

Dear Mr. Perlow:

      Under Federal Rule of Appellate Procedure 28(j), Appellee Phillips 66 writes to identify supplemental authority which it may raise at argument.

      In denying Appellant Magema Technology LLC's motion for a new trial, the district court explained that certain improper comments by Phillips 66's counsel did not affect the outcome of the trial because Magema failed to meet its burden of proof on at least two elements of its claims. Citing no authority, Magema argues here that the district court must have erred because its denial of Phillips 66's motion for judgment as a matter of law ("JMOL") "demonstrates that Magema provided sufficient evidence from which a jury could find those elements were met." Magema Br. 42-47; Reply 25.

      Magema is incorrect. Under controlling case law, pre-verdict JMOL denial is no indication that the plaintiff submitted sufficient evidence of any claim. Rule 50(a) is expressly discretionary: "the court *may* . . . resolve the issue against the party" if the evidence is legally insufficient. Fed. R. Civ. P. 50(a) (emphasis added). As the Supreme Court explained, "a district court is permitted to enter judgment as a matter of law when it concludes that the evidence is legally insufficient," but "it is not required to do so." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405 (2006). Instead, "the district courts are, if anything, encouraged to submit the case to the jury, rather than granting such motions." *Id.* ("'[I]t usually is desirable to take a verdict, and then pass on the sufficiency of the evidence on a post-verdict motion.'" (quoting Wright & Miller, *Federal Practice & Procedure* § 2533 (3d ed.))); *McPhillamy v. Brown & Root, Inc.*, 810 F.2d 529, 533 (5th Cir. 1987) ("encourag[ing] district courts to reserve judgment on motions for directed verdict" to avoid a retrial after appellate reversal "because there is a jury verdict that can be reinstated").

Thus, the primary basis of Magema's first issue presented fails because the district court need not grant—and in fact was discouraged from granting—a JMOL despite Magema's inability to carry its evidentiary burden.

Very truly yours,

/s/ *Denise L. Drake*
Denise L. Drake
*Counsel for Defendants-Appellees*

cc: all counsel of record (by CM/ECF)

# EXHIBIT 1

# UNITHERM FOOD SYSTEMS, INC. *v.* SWIFT-ECKRICH, INC., DBA CONAGRA REFRIGERATED FOODS

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 04–597.   Argued November 2, 2005—Decided January 23, 2006

After respondent ConAgra warned companies selling equipment and processes for browning precooked meats that it intended to protect its rights under its patent for that process, petitioner Unitherm, whose president had invented the process six years before ConAgra filed its patent application, and one of ConAgra's direct competitors jointly filed suit in an Oklahoma federal court. As relevant here, they sought a declaration that ConAgra's patent was invalid and unenforceable and alleged that ConAgra had violated § 2 of the Sherman Act by attempting to enforce a patent obtained by fraud on the Patent and Trademark Office, see *Walker Process Equipment, Inc.* v. *Food Machinery & Chemical Corp.*, 382 U. S. 172, 174. The District Court found the patent invalid and allowed the *Walker Process* claim to proceed to trial. Before the case was submitted to the jury, ConAgra moved for a directed verdict under Federal Rule of Civil Procedure 50(a) based on legal insufficiency of the evidence. The court denied the motion, the jury returned a verdict for Unitherm, and ConAgra neither renewed its motion for judgment as a matter of law pursuant to Rule 50(b) nor moved for a new trial on antitrust liability pursuant to Rule 59. On appeal to the Federal Circuit, ConAgra maintained that there was insufficient evidence to sustain the *Walker Process* verdict. The court applied Tenth Circuit law, under which a party that has failed to file a postverdict sufficiency of the evidence challenge may nonetheless raise such a claim on appeal, so long as the party filed a Rule 50(a) motion before submission of the case to the jury. The only available relief in such a circumstance is a new trial. Freed to examine the sufficiency of the evidence, the Federal Circuit vacated the judgment and ordered a new trial.

*Held:* Since respondent failed to renew its preverdict motion as specified in Rule 50(b), the Federal Circuit had no basis for reviewing respondent's sufficiency of the evidence challenge. Rule 50 sets forth the requirements, establishing two stages, for challenging the sufficiency of the evidence in a civil jury trial. Rule 50(a) allows a challenge prior to the case's submission to the jury, authorizing the district court to grant the motion at the court's discretion. Rule 50(b), by contrast, sets forth

the requirements for renewing the challenge after the jury verdict and entry of judgment. A party's failure to file a Rule 50(b) postverdict motion deprives an appellate court of the "power to direct the District Court to enter judgment contrary to the one it had permitted to stand." *Cone* v. *West Virginia Pulp & Paper Co.,* 330 U. S. 212, 218. It also deprives an appellate court of the power to order the entry of judgment in favor of that party where the district court directed the jury's verdict, *Globe Liquor Co.* v. *San Roman,* 332 U. S. 571, and where the district court expressly reserved a party's preverdict directed verdict motion and then denied it after the verdict, *Johnson* v. *New York, N. H. & H. R. Co.,* 344 U. S. 48. A postverdict motion is necessary because determining "whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." *Cone, supra,* at 216. Moreover, the requirement "is not an idle motion" but "an essential part of the rule, firmly grounded in principles of fairness." *Johnson, supra,* at 53. These authorities require reversal of the judgment below. This Court's observations about the postverdict motion's necessity and the benefits of the district court's input at that stage apply with equal force whether a party is seeking judgment as a matter of law or simply a new trial. Contrary to respondent's argument, the *Cone, Globe Liquor,* and *Johnson* outcomes underscore this holding. Those litigants all secured new trials, but they had moved for a new trial postverdict in the district court and did not seek to establish their entitlement to a new trial based solely on a denied Rule 50(a) motion. This result is further validated by the purported basis of respondent's appeal, namely, the District Court's denial of its Rule 50(a) motion. *Cone, Globe Liquor,* and *Johnson* unequivocally establish that the precise subject matter of a party's Rule 50(a) motion cannot be appealed unless that motion is renewed pursuant to Rule 50(b). Respondent, rather than seeking to appeal the claim raised in its Rule 50(a) motion, seeks a *new trial* based on legal insufficiency of the evidence. If a litigant that has failed to file a Rule 50(b) motion is foreclosed from seeking the relief sought in its Rule 50(a) motion, then surely respondent is foreclosed from seeking relief it did not and could not seek in its preverdict motion. Rule 50(b)'s text confirms that respondent's Rule 50(a) motion did not give the District Court the option of ordering a new trial, for it provides that a district court may only order a new trial based on issues raised in a Rule 50(a) motion when "ruling on a renewed motion" under Rule 50(b). If the District Court lacked such power, then the Court of Appeals was similarly powerless. Rule 50(a)'s text and application also support this result. A district court may enter judgment as a matter of law when it concludes

that the evidence is legally insufficient, but it is not required to do so.
Thus, the denial of respondent's Rule 50(a) motion was not error, but
merely an exercise of the District Court's discretion. Pp. 399–407.

375 F. 3d 1341, reversed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J.,
and O'CONNOR, SCALIA, SOUTER, GINSBURG, and BREYER, JJ., joined.
STEVENS, J., filed a dissenting opinion, in which KENNEDY, J., joined,
*post,* p. 407.

*Burck Bailey* argued the cause for petitioner. With him
on the briefs were *Greg A. Castro, Jay P. Walters,* and *Dennis D. Brown.*

*Malcolm L. Stewart* argued the cause for the United
States as *amicus curiae* urging reversal. With him on the
brief were *Solicitor General Clement, Assistant Attorney
General Keisler, Deputy Solicitor General Hungar, Marleigh Dover,* and *August Flentje.*

*Robert A. Schroeder* argued the cause for respondent.
With him on the briefs were *John R. Reese, Leigh Otsuka
Curran,* and *John P. Passarelli.*

JUSTICE THOMAS delivered the opinion of the Court.

Ordinarily, a party in a civil jury trial that believes the
evidence is legally insufficient to support an adverse jury
verdict will seek a judgment as a matter of law by filing a
motion pursuant to Federal Rule of Civil Procedure 50(a)
before submission of the case to the jury, and then (if the
Rule 50(a) motion is not granted and the jury subsequently
decides against that party) a motion pursuant to Rule 50(b).
In this case, however, the respondent filed a Rule 50(a) motion before the verdict, but did not file a Rule 50(b) motion
after the verdict. Nor did respondent request a new trial
under Rule 59. The Court of Appeals nevertheless proceeded to review the sufficiency of the evidence and, upon a
finding that the evidence was insufficient, remanded the case
for a new trial. Because our cases addressing the requirements of Rule 50 compel a contrary result, we reverse.

I

The genesis of the underlying litigation in this case was ConAgra's attempt to enforce its patent for "A Method for Browning Precooked Whole Muscle Meat Products," U. S. Patent No. 5,952,027 ('027 patent). In early 2000, ConAgra issued a general warning to companies who sold equipment and processes for browning precooked meats explaining that it intended to "'aggressively protect all of [its] rights under [the '027] patent.'" 375 F. 3d 1341, 1344 (CA Fed. 2004). Petitioner Unitherm sold such processes, but did not receive ConAgra's warning. ConAgra also contacted its direct competitors in the precooked meat business, announcing that it was "'making the '027 Patent and corresponding patents that may issue available for license at a royalty rate of 10¢ per pound.'" *Id.*, at 1345. Jennie-O, a direct competitor, received ConAgra's correspondence and undertook an investigation to determine its rights and responsibilities with regard to the '027 patent. Jennie-O determined that the browning process it had purchased from Unitherm was the same as the process described in the '027 patent. Jennie-O further determined that the '027 patent was invalid because Unitherm's president had invented the process described in that patent six years before ConAgra filed its patent application.

Consistent with these determinations, Jennie-O and Unitherm jointly sued ConAgra in the Western District of Oklahoma. As relevant here, Jennie-O and Unitherm sought a declaration that the '027 patent was invalid and unenforceable, and alleged that ConAgra had violated § 2 of the Sherman Act, ch. 647, 26 Stat. 209, as amended, 15 U. S. C. § 2, by attempting to enforce a patent that was obtained by committing fraud on the Patent and Trademark Office (PTO). See *Walker Process Equipment, Inc.* v. *Food Machinery & Chemical Corp.*, 382 U. S. 172, 174 (1965) (holding that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided

the other elements necessary to a § 2 case are present").
The District Court construed the '027 patent and determined
that it was invalid based on Unitherm's prior public use and
sale of the process described therein. 35 U. S. C. § 102(b).
After dismissing Jennie-O for lack of antitrust standing, the
District Court allowed Unitherm's *Walker Process* claim to
proceed to trial. Prior to the court's submission of the case
to the jury, ConAgra moved for a directed verdict under
Rule 50(a) based on legal insufficiency of the evidence. The
District Court denied that motion.[1] The jury returned a
verdict for Unitherm, and ConAgra neither renewed its mo-
tion for judgment as a matter of law pursuant to Rule 50(b),
nor moved for a new trial on antitrust liability pursuant to
Rule 59.[2]

On appeal to the Federal Circuit, ConAgra maintained
that there was insufficient evidence to sustain the jury's
*Walker Process* verdict. Although the Federal Circuit has
concluded that a party's "failure to present the district court
with a post-verdict motion precludes appellate review of suf-
ficiency of the evidence," *Biodex Corp.* v. *Loredan Biomedi-
cal, Inc.*, 946 F. 2d 850, 862 (1991), in the instant case it was
bound to apply the law of the Tenth Circuit, 375 F. 3d, at
1365, n. 7 ("On most issues related to Rule 50 motions . . .
we generally apply regional circuit law unless the precise

---

[1] Petitioner contends that respondent's Rule 50(a) motion pertained only
to the fraud element of petitioner's *Walker Process* claim, and that it did
not encompass the remaining antitrust elements of that claim. Because
we conclude that petitioner is entitled to prevail irrespective of the scope
of respondent's Rule 50(a) motion, we assume without deciding that that
motion pertained to all aspects of petitioner's § 2 claim. But see Amend-
ments to Federal Rules of Civil Procedure, 134 F. R. D. 525, 687 (1991)
("A post-trial motion for judgment can be granted only on grounds ad-
vanced in the pre-verdict motion").

[2] While ConAgra did file a postverdict motion seeking a new trial on
antitrust damages, that motion did not seek to challenge the sufficiency of
the evidence establishing antitrust liability and thus has no bearing on the
instant case.

issue being appealed pertains uniquely to patent law"). Under Tenth Circuit law, a party that has failed to file a postverdict motion challenging the sufficiency of the evidence may nonetheless raise such a claim on appeal, so long as that party filed a Rule 50(a) motion prior to submission of the case to the jury. *Cummings* v. *General Motors Corp.*, 365 F. 3d 944, 950–951 (2004). Notably, the only available relief in such a circumstance is a new trial. *Id.*, at 951.

Freed to examine the sufficiency of the evidence, the Federal Circuit concluded that, although Unitherm had presented sufficient evidence to support a determination that ConAgra had attempted to enforce a patent that it had obtained through fraud on the PTO, 375 F. 3d, at 1362, Unitherm had failed to present evidence sufficient to support the remaining elements of its antitrust claim. *Id.*, at 1365 ("Unitherm failed to present any economic evidence capable of sustaining its asserted relevant antitrust market, and little to support any other aspect of its Section 2 claim"). Accordingly, it vacated the jury's judgment in favor of Unitherm and remanded for a new trial. We granted certiorari, 543 U. S. 1186 (2005), and now reverse.

## II

Federal Rule of Civil Procedure 50 sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges—prior to submission of the case to the jury, and after the verdict and entry of judgment. Rule 50(a) allows a party to challenge the sufficiency of the evidence prior to submission of the case to the jury, and authorizes the district court to grant such motions at the court's discretion:

"(a) JUDGMENT AS A MATTER OF LAW.

"(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against

that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

"(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment."

Rule 50(b), by contrast, sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict and entry of judgment.

"(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

"(1) if a verdict was returned:

"(A) allow the judgment to stand,

"(B) order a new trial, or

"(C) direct entry of judgment as a matter of law . . . ."

This Court has addressed the implications of a party's failure to file a postverdict motion under Rule 50(b) on several occasions and in a variety of procedural contexts. This Court has concluded that, "[i]n the absence of such a motion" an "appellate court [is] without power to direct the District

Court to enter judgment contrary to the one it had permitted to stand." *Cone* v. *West Virginia Pulp & Paper Co.*, 330 U. S. 212, 218 (1947). This Court has similarly concluded that a party's failure to file a Rule 50(b) motion deprives the appellate court of the power to order the entry of judgment in favor of that party where the district court directed the jury's verdict, *Globe Liquor Co.* v. *San Roman*, 332 U. S. 571 (1948), and where the district court expressly reserved a party's preverdict motion for a directed verdict and then denied that motion after the verdict was returned, *Johnson* v. *New York, N. H. & H. R. Co.*, 344 U. S. 48 (1952). A postverdict motion is necessary because "[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart."[3] *Cone, supra*, at 216. Moreover, the "requirement of a timely application for judgment after verdict is not an idle motion" because it "is . . . an essential part of the rule, firmly grounded in principles of fairness." *Johnson, supra*, at 53.

The foregoing authorities lead us to reverse the judgment below. Respondent correctly points out that these authorities address whether an appellate court may enter judgment in the absence of a postverdict motion, as opposed to whether an appellate court may order a new trial (as the Federal Cir-

---

[3] Neither *Neely* v. *Martin K. Eby Constr. Co.*, 386 U. S. 317 (1967), nor *Weisgram* v. *Marley Co.*, 528 U. S. 440 (2000), undermine our judgment about the benefit of postverdict input from the district court. In those cases this Court determined that an appellate court may, in certain circumstances, direct the entry of judgment when it reverses the district court's denial of a Rule 50(b) motion. But in such circumstances the district court will have had an opportunity to consider the propriety of entering judgment or ordering a new trial by virtue of the postverdict motion. Moreover, these cases reiterate the value of the district court's input, cautioning the courts of appeals to be "'constantly alert' to 'the trial judge's first-hand knowledge of witnesses, testimony, and issues.'" *Id.*, at 443 (quoting *Neely, supra*, at 325).

cuit did here). But this distinction is immaterial. This
Court's observations about the necessity of a postverdict mo-
tion under Rule 50(b), and the benefits of the district court's
input at that stage, apply with equal force whether a party
is seeking judgment as a matter of law or simply a new trial.
In *Cone*, this Court concluded that, because Rule 50(b) per-
mits the district court to exercise its discretion to choose
between ordering a new trial and entering judgment, its "ap-
praisal of the bona fides of the claims asserted by the liti-
gants is of great value in reaching a conclusion as to whether
a *new trial* should be granted." 330 U. S., at 216 (emphasis
added). Similarly, this Court has determined that a party
may only pursue on appeal a particular avenue of relief avail-
able under Rule 50(b), namely, the entry of judgment *or a
new trial*, when that party has complied with the Rule's fil-
ing requirements by requesting that particular relief below.
See *Johnson, supra,* at 54 ("Respondent made a motion to
set aside the verdict and for new trial within the time re-
quired by Rule 50(b). It failed to comply with permission
given by 50(b) to move for judgment *n. o. v.* after the verdict.
In this situation respondent is entitled only to a new trial,
not to a judgment in its favor").[4]

---

[4] The dissent's suggestion that 28 U. S. C. § 2106 permits the courts of
appeals to consider the sufficiency of the evidence underlying a civil jury
verdict notwithstanding a party's failure to comply with Rule 50 is fore-
closed by authority of this Court. While the dissent observes that § 2106
was enacted after *Cone* and *Globe Liquor Co.* v. *San Roman,* 332 U. S. 571
(1948), *post,* at 408 (opinion of STEVENS, J.), it fails to note that it was
enacted prior to *Johnson. Johnson* explicitly reaffirmed those earlier
cases, concluding that "in the absence of a motion for judgment notwith-
standing the verdict made in the trial court within ten days after recep-
tion of a verdict [Rule 50] forbids the trial judge or an appellate court to
enter such a judgment." 344 U. S., at 50. Moreover, in *Neely,* this Court
observed that § 2106 is "broad enough to include the power to direct entry
of judgment *n. o. v.* on appeal," 386 U. S., at 322, but nonetheless reaf-
firmed that *Cone, Globe Liquor,* and *Johnson* "make it clear that an appel-
late court may not order judgment *n. o. v.* where the verdict loser
has failed strictly to comply with the procedural requirements of Rule

Despite the straightforward language employed in *Cone*, *Globe Liquor*, and *Johnson*, respondent maintains that those cases dictate affirmance here, because in each of those cases the litigants secured a new trial. But in each of those cases the appellants moved for a new trial postverdict in the District Court, and did not seek to establish their entitlement to a new trial solely on the basis of a denied Rule 50(a) motion. See *Cone, supra,* at 213 (noting that respondent moved for a new trial);[5] *Globe Liquor, supra,* at 572 ("The

_____

50(b)," 386 U. S., at 325. Contrary to the dissent's suggestion, *Neely* confirms that the broad grant of authority to the courts of appeals in §2106 must be exercised consistent with the requirements of the Federal Rules of Civil Procedure as interpreted by this Court.

The dissent's approach is not only foreclosed by authority of this Court, it also may present Seventh Amendment concerns. The implication of the dissent's interpretation of §2106 is that a court of appeals would be free to examine the sufficiency of the evidence regardless of whether the appellant had filed a Rule 50(a) motion in the district court and, in the event the appellant had filed a Rule 50(a) motion, regardless of whether the district court had ever *ruled* on that motion. The former is squarely foreclosed by *Slocum* v. *New York Life Ins. Co.,* 228 U. S. 364 (1913), and the latter is inconsistent with this Court's explanation of the requirements of the Seventh Amendment in *Baltimore & Carolina Line, Inc.* v. *Redman,* 295 U. S. 654, 658 (1935) (explaining that "under the pertinent rules of the common law the court of appeals could set aside the verdict for error of law, such as the trial court's *ruling* respecting the sufficiency of the evidence, and direct a new trial, but could not itself determine the issues of fact and direct a judgment for the defendant, for this would cut off the plaintiff's unwaived right to have the issues of fact determined by a jury" (emphasis added)). Indeed, Rule 50 was drafted with such concerns in mind. See 9A C. Wright & A. Miller, Federal Practice and Procedure §2522, pp. 244–246 (2d ed. 1995) (hereinafter Federal Practice).

[5] While the precise nature of the new trial motion at issue in *Cone* is difficult to ascertain from this Court's description of that motion, the Court of Appeals opinion in that case confirms that the movant had properly objected to the admission of certain evidence, and then moved postverdict "for a new trial [on the basis of the inadmissible evidence] and later renewed this motion upon the basis of newly-discovered evidence." *West Virginia Pulp & Paper Co.* v. *Cone,* 153 F. 2d 576, 580 (CA4 1946). This Court did not disturb the Court of Appeals' holding that formed the

respondents . . . moved for a new trial on the ground . . . that
there were many contested issues of fact"). Indeed, *John-
son* concluded that respondent was *only* entitled to a new
trial by virtue of its motion for such "within the time re-
quired by Rule 50(b)." 344 U. S., at 54. Accordingly, these
outcomes merely underscore our holding today—a party is
not entitled to pursue a new trial on appeal unless that party
makes an appropriate postverdict motion in the district
court.

Our determination that respondent's failure to comply
with Rule 50(b) forecloses its challenge to the sufficiency of
the evidence is further validated by the purported basis of
respondent's appeal, namely, the District Court's denial of
respondent's preverdict Rule 50(a) motion. As an initial
matter, *Cone*, *Globe Liquor*, and *Johnson* unequivocally es-
tablish that the precise subject matter of a party's Rule 50(a)
motion—namely, its entitlement to judgment as a matter of
law—cannot be appealed unless that motion is renewed pur-
suant to Rule 50(b). Here, respondent does not seek to pur-
sue on appeal the precise claim it raised in its Rule 50(a)
motion before the District Court—namely, its entitlement to
judgment as a matter of law. Rather, it seeks a *new trial*
based on the legal insufficiency of the evidence. But if, as
in *Cone*, *Globe Liquor*, and *Johnson*, a litigant that has failed
to file a Rule 50(b) motion is foreclosed from seeking the
relief it sought in its Rule 50(a) motion—*i. e.*, the entry of
judgment—then surely respondent is foreclosed from seek-
ing a new trial, relief it did not and could not seek in its
preverdict motion. In short, respondent never sought a new
trial before the District Court, and thus forfeited its right to
do so on appeal. *Yakus* v. *United States*, 321 U. S. 414, 444
(1944) ("No procedural principle is more familiar to this
Court than that a . . . right may be forfeited . . . by the

---

basis of the movant's entitlement to a new trial, namely, "the Circuit Court
of Appeals' holding that there was prejudicial error in the admission of
evidence." 330 U. S., at 215.

failure to make timely assertion of the right before a tribunal having jurisdiction to determine it").

The text of Rule 50(b) confirms that respondent's preverdict Rule 50(a) motion did not present the District Court with the option of ordering a new trial. That text provides that a district court may only order a new trial on the basis of issues raised in a preverdict Rule 50(a) motion when "ruling on a renewed motion" under Rule 50(b). Accordingly, even if the District Court was inclined to grant a new trial on the basis of arguments raised in respondent's preverdict motion, it was without the power to do so under Rule 50(b) absent a postverdict motion pursuant to that Rule. Consequently, the Court of Appeals was similarly powerless.

Similarly, the text and application of Rule 50(a) support our determination that respondent may not challenge the sufficiency of the evidence on appeal on the basis of the District Court's denial of its Rule 50(a) motion. The Rule provides that "the court *may* determine" that "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [a given] issue," and "*may* grant a motion for judgment as a matter of law against that party . . . ." (Emphasis added.) Thus, while a district court is permitted to enter judgment as a matter of law when it concludes that the evidence is legally insufficient, it is not required to do so. To the contrary, the district courts are, if anything, encouraged to submit the case to the jury, rather than granting such motions. As Wright and Miller explain:

"Even at the close of all the evidence it may be desirable to refrain from granting a motion for judgment as a matter of law despite the fact that it would be possible for the district court to do so. If judgment as a matter of law is granted and the appellate court holds that the evidence in fact was sufficient to go to the jury, an entire new trial must be had. If, on the other hand, the trial court submits the case to the jury, though it thinks the evidence insufficient, final determination of the case is

expedited greatly. If the jury agrees with the court's
appraisal of the evidence, and returns a verdict for the
party who moved for judgment as a matter of law, the
case is at an end. If the jury brings in a different ver-
dict, the trial court can grant a renewed motion for judg-
ment as a matter of law. Then if the appellate court
holds that the trial court was in error in its appraisal of
the evidence, it can reverse and order judgment on the
verdict of the jury, without any need for a new trial.
For this reason the appellate courts repeatedly have said
that it usually is desirable to take a verdict, and then
pass on the sufficiency of the evidence on a post-verdict
motion." 9A Federal Practice §2533, at 319 (footnote
omitted).

Thus, the District Court's denial of respondent's preverdict
motion cannot form the basis of respondent's appeal, because
the denial of that motion was not error. It was merely an
exercise of the District Court's discretion, in accordance with
the text of the Rule and the accepted practice of permitting
the jury to make an initial judgment about the sufficiency of
the evidence. The only error here was counsel's failure to
file a postverdict motion pursuant to Rule 50(b).[6]

---

[6] Respondent claims that its failure to renew its Rule 50(a) motion was
in reliance on the Tenth Circuit's determination that it could order a new
trial in the absence of a Rule 50(b) motion. But respondent cannot credi-
bly maintain that it wanted the Court of Appeals to order a new trial as
opposed to entering judgment. And, as the Tenth Circuit has recognized,
respondent could not obtain the entry of judgment unless it complied with
Rule 50(b). *Cummings* v. *General Motors Corp.*, 365 F. 3d 944, 951 (2004).
Respondent therefore had every incentive to comply with that Rule's re-
quirements. Accordingly, we reject its contention that our application of
Rule 50(b) to the instant case is impermissibly retroactive. See also
*Harper* v. *Virginia Dept. of Taxation*, 509 U. S. 86, 97 (1993) ("[W]e can
scarcely permit the substantive law to shift and spring according to the
particular equities of individual parties' claims of actual reliance on an old
rule and of harm from a retroactive application of the new rule" (internal
quotation marks and brackets omitted)).

\*      \*      \*

For the foregoing reasons, we hold that since respondent
failed to renew its preverdict motion as specified in Rule
50(b), there was no basis for review of respondent's suffi-
ciency of the evidence challenge in the Court of Appeals.
The judgment of the Court of Appeals is reversed.[7]

*It is so ordered.*

Justice Stevens, with whom Justice Kennedy joins,
dissenting.

Murphy's law applies to trial lawyers as well as pilots.
Even an expert will occasionally blunder.   For that reason
Congress has preserved the federal appeals courts' power to
correct plain error, even though trial counsel's omission will
ordinarily give rise to a binding waiver.   This is not a case,
in my view, in which the authority of the appellate court is
limited by an explicit statute or controlling rule.   The spirit
of the Federal Rules of Civil Procedure favors preservation
of a court's power to avoid manifestly unjust results in ex-
ceptional cases.   See *Johnson* v. *New York, N. H. & H. R.
Co.,* 344 U. S. 48, 62 (1952) (Frankfurter, J., dissenting)
("'Procedure is the means; full, equal and exact enforcement
of substantive law is the end'" (quoting Pound, The Eti-
quette of Justice, 3 Proceedings Neb. St. Bar Assn. 231
(1909))).   Moreover, we have an overriding duty to obey
statutory commands that unambiguously express the intent
of Congress even in areas such as procedure in which we
may have special expertise.

Today, relying primarily on a case decided in March 1947,
*Cone* v. *West Virginia Pulp & Paper Co.,* 330 U. S. 212, and
a case decided in January 1948, *Globe Liquor Co.* v. *San*

---

[7] We reject respondent's contention that it is entitled to a remand for
reconsideration in light of *Phillips* v. *AWH Corp.,* 415 F. 3d 1303 (CA Fed.
2005).   The Federal Circuit has already denied respondent's petition for
rehearing raising this issue.

*Roman,* 332 U. S. 571, the Court holds that the Court of Appeals was "powerless" to review the sufficiency of the evidence supporting the verdict in petitioner's favor because respondent failed to file proper postverdict motions pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure in the trial court. *Ante,* at 405. The majority's holding is inconsistent with a statute enacted just months after *Globe Liquor* was decided. That statute, which remains in effect today, provides:

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U. S. C. § 2106.

Nothing in Rule 50(b) limits this statutory grant of power to appellate courts; while a party's failure to make a Rule 50(b) motion precludes the *district court* from directing a verdict in that party's favor, the Rule does not purport to strip the courts of appeals of the authority to review district court judgments or to order such relief as "may be just under the circumstances." Nor do general principles of waiver or forfeiture have that effect. Cf. *ante,* at 404–405. It is well settled that a litigant's waiver or forfeiture of an argument does not, in the absence of a contrary statutory command, preclude the courts of appeals from considering those arguments. See *Singleton* v. *Wulff,* 428 U. S. 106, 121 (1976). Arguments raised for the first time on appeal may be entertained, for example, if their consideration would prevent manifest injustice. *Ibid.*\*

---

\*The Court suggests that the Seventh Amendment limits appellate courts' power to review judgments under 28 U. S. C. § 2106. See *ante,* at 402–403, n. 4. I disagree with the Court's analysis in two respects.

For the reasons articulated by the Court in *Cone*, 330 U. S., at 216, it may be unfair or even an abuse of discretion for a court of appeals to direct a verdict in favor of the party that lost below if that party failed to make a timely Rule 50(b) motion. Likewise, it may not be "just under the circumstances" for a court of appeals to order a new trial in the absence of a proper Rule 59 motion. Finally, a court of appeals has discretion to rebuff, on grounds of waiver or forfeiture, a challenge to the sufficiency of the evidence absent a proper Rule 50(b) or Rule 59 motion made in the district court. None of the foregoing propositions rests, however, on a determination that the courts of appeals lack "power" to review the sufficiency of the evidence and order appropriate relief under these circumstances, and I can divine no basis for that determination.

I respectfully dissent.

---

First, although the right to trial by jury might be implicated if no Rule 50(a) motion had been made, such a motion *was* made in this case. The Rule 50(a) motion triggered the automatic reservation of "legal questions," Fed. Rule Civ. Proc. 50(b), and that reservation, in turn, averted any Seventh Amendment problem, see *Baltimore & Carolina Line, Inc.* v. *Redman*, 295 U. S. 654 (1935). Second, the Seventh Amendment imposes no greater restriction on appellate courts than it does on district courts in these circumstances; "[a]s far as the Seventh Amendment's right to jury trial is concerned, there is no greater restriction on the province of the jury when an appellate court enters judgment *n. o. v.* than when a trial court does." *Neely* v. *Martin K. Eby Constr. Co.*, 386 U. S. 317, 322 (1967).

# EXHIBIT 2

Constitution did not bar Fransaw's December 1981 trial for murder under sections 19.02(a)(1) and 19.02(a)(2), his first two complaints on appeal are without merit.

### B. Lesser Included Offense

Relying on *Plunkett v. Estelle,* 709 F.2d 1004 (5th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984), *see* note 14, *supra,* Fransaw asserts, independent of his double jeopardy argument, that we must vacate his conviction for voluntary manslaughter because voluntary manslaughter was not alleged in his indictment. This argument has no merit.

[10] Under Texas law at the time of Fransaw's trial, voluntary manslaughter was, in all cases, a lesser crime included in the offense of murder. *See* text at note 1, *supra.* Although the Texas Court of Criminal Appeals has since narrowed the circumstances under which that is so, *see* note 1, *supra,* this subsequent modification does not alter the fact that when Fransaw was tried, the charge on the greater offense of murder was "sufficient notice to the defendant that he [might] be called to defend the lesser included charge." *Walker v. United States,* 418 F.2d 1116, 1119 (D.C. Cir.1969); *United States v. Whitlock,* 663 F.2d 1094, 1101 (D.C.Cir.1980).

[11] This "lesser included offense doctrine" permits the court to charge the jury on a lesser unindicted offense where that offense is complete upon commission of "some of the elements of the crime charged." *Berra v. United States,* 351 U.S. 131, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956). The doctrine "developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged." *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). As the doctrine now stands, defendants also frequently invoke it. *Id.*

The Supreme Court has discussed the lesser included offense doctrine on numerous occasions without suggesting that it is in any way inconsistent with the constitutional requirement that defendant be put on notice of the charges against him. *E.g., Berra; Keeble; Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Sansone v. United States,* 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). Our cases likewise discuss the lesser included offense doctrine without questioning its constitutionality. *E.g., United States v. Williams,* 775 F.2d 1295, 1302 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1477, 89 L.Ed.2d 732 (1986); *Alexander v. McCotter,* 775 F.2d 595, 599–601 (5th Cir.1985); *Bell v. Watkins,* 692 F.2d 999 (5th Cir. 1982), *cert. denied,* 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983). In short, the doctrine is on sound constitutional footing and is available to the government as well as to defendants. C. Wright, 2 *Federal Practice & Procedure (Criminal)* § 498 at 800 (1982).

### Conclusion

For the reasons stated, we affirm the district court's denial of Fransaw's habeas petition.

AFFIRMED.



**Bradford McPHILLAMY,**
**Plaintiff-Appellant,**

v.

**BROWN & ROOT, INC., et al.,**
**Defendants-Appellees.**

**No. 86–3480**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1987.

Seaman brought unseaworthiness and Jones Act claims against barge owner after

frayed cable on barge snapped and struck him in the face. The United States District Court for the Eastern District of Louisiana, George Arceneaux, Jr., J., entered judgment for seaman but denied seaman's claim for prejudgment interest and seaman appealed. The Court of Appeals, Garwood, Circuit Judge, held that seaman's injury was single harm from single wrong, providing no realistic basis for apportioning damages between his Jones Act claim and unseaworthiness claims, and thus seaman was not entitled to award of prejudgment interest.

Affirmed.

**1. Interest ⟐39(2.25)**

Where jury awards damages on Jones Act and unseaworthiness claims without allocating its award between the claims, plaintiff is not entitled to prejudgment interest, while if damages are apportioned, plaintiff may receive prejudgment interest on unseaworthiness award, but not Jones Act award. Jones Act, 46 U.S.C.A. § 688.

**2. Interest ⟐39(2.25)**

Prejudgment interest is not recoverable in Jones Act cases tried to a jury. Jones Act, 46 U.S.C.A. § 688.

**3. Interest ⟐39(2.25)**

If Jones Act claim is tried to the court, the allowance of prejudgment interest is within the discretion of the trial court, as is the case where a Jones Act claim is joined with an unseaworthiness claim and both are tried to the court. Jones Act, 46 U.S.C.A. § 688.

**4. Interest ⟐39(2.25)**

In view of the fact that seaman's injury was from single harm, the frayed cable on barge which broke and struck seaman in the face, there was no realistic basis for jury to apportion damages between seaman's Jones Act claim and his unseaworthiness claims, so that seaman was not entitled to award of prejudgment interest. Jones Act, 46 U.S.C.A. § 688.

**5. Admiralty ⟐80**

Unseaworthiness claims sound in admiralty and are therefore not tried to the jury unless plaintiff invokes diversity jurisdiction or unless they are brought pendent to federal law claims such as the Jones Act under which plaintiff may request jury trial. Jones Act, 46 U.S.C.A. § 688.

**6. Federal Civil Procedure ⟐2124**

Trial court did not err in refusing to grant seaman a directed verdict on unseaworthiness count in his complaint, and instead reserving decision on motion until jury had rendered verdict, despite contention of seaman who prevailed on Jones Act and unseaworthiness claim, that if district court had granted his motion, he would have abandoned his Jones Act claim and requested jury to return finding of damages on unseaworthiness count, which would have entitled him to receive prejudgment interest. Jones Act, 46 U.S.C.A. § 688.

———

Terrence K. Knister, William J. Hamlin, Walker, Bordelon, Hamlin & Theriot, New Orleans, La., for plaintiff-appellant.

Charles W. Schmidt, III, Christovich & Kearney, New Orleans, La., for defendants-appellees.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before CLARK, Chief Judge, GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Bradford McPhillamy brought unseaworthiness and Jones Act claims against appellee Brown & Root, Inc., his employer, after a frayed and overloaded cable on his barge snapped and struck him in the face. The district court denied McPhillamy's motion for directed verdict and sent the case to the jury. The jury found the employer negligent and the vessel unseaworthy, and awarded McPhillamy $75,000 actual damages and $25,000 punitive damages. McPhillamy appeals, claim-

ing only that the district court erred by not awarding him prejudgment interest.

### Facts and Proceedings Below

Bradford McPhillamy worked as a "stabber" on Brown & Root's Lay Barge M–289 in the Gulf of Mexico. At the time of the accident, Brown & Root was laying a 24-inch natural gas pipeline in the Gulf. As "stabber," McPhillamy was responsible for hooking a cable, called an "endowire," to each new segment of pipe about to be welded to the pipeline. The endowire, which is attached to the barge, pulls and snugs the new pipe segment to the pipeline so it can be welded at the joint. During this operation, the endowire is almost always under tension.

On March 2, 1984, the endowire broke and snapped back into McPhillamy's face. He suffered facial lacerations that eventually necessitated plastic surgery. The accident loosened some of his teeth and also caused or exacerbated various behavioral problems. Brown & Root stipulated at trial that Lay Barge M–289 was a vessel within the meaning of the Jones Act, that McPhillamy was a seaman, and that the cable in question struck McPhillamy.

The evidence showed that the one-half-inch cable was too small for pulling the 24-inch pipe, and that the cable was worn and rusty. The cable had broken three times earlier on the night of the accident and it had also frayed once to the point of separation. After the final break before McPhillamy's injury, his foreman warned him to be cautious because the cable was "rotten." A replacement cable was ready and the changeout would have taken less than thirty minutes. McPhillamy's foreman, aware of the dangerous cable, did not direct his men to replace it even when the pipe laying operation ceased for about an hour while a flawed weld was repaired.

Brown & Root presented no evidence to exonerate itself from liability. At the close of the evidence, McPhillamy moved for a directed verdict on the issues of unseaworthiness and Jones Act negligence. In response to this motion, defense counsel

suggested three things: (1) McPhillamy should not have been standing where he could be struck by the cable if it broke (even though there was uncontradicted testimony that he could not perform his job as "stabber" and yet remain out of danger's way); (2) McPhillamy was responsible for the break because he and others had spliced the cable after it had broken earlier in the shift (though there was no evidence that the endowire broke at the splice); and (3) there was no evidence of how the cable came apart. Based on these assertions, Brown & Root insisted the case should go to the jury. The court, though "not inclined to think [the case] particularly close," expressly reserved decision on McPhillamy's motion pending the jury verdict. Neither party suggested that the jury be requested to allocate damages between the Jones Act and unseaworthiness claims.

The jury found that Brown & Root was negligent, that its barge was unseaworthy, and that McPhillamy was not contributorily negligent. The jury awarded $75,000 in compensatory damages and $25,000 in punitive damages. The district court entered judgment in this amount along with postjudgment interest.

In his motion for judgment notwithstanding the verdict, McPhillamy raises the same issues now before us: namely, that he is entitled to prejudgment interest and that, if not, the district court wrongfully foreclosed the possibility of that interest by refusing to grant a directed verdict in his favor on unseaworthiness liability.

### Discussion

#### A. Prejudgment Interest

[1–4] As the judgment now stands, McPhillamy is not entitled to prejudgment interest because the jury awarded damages on the Jones Act and unseaworthiness claims without allocating its award between the claims. The plaintiff is not entitled to any prejudgment interest in cases such as this unless the jury apportions the damages between the Jones Act claim and

the unseaworthiness claim. *Domangue v. Penrod Drilling Co.,* 748 F.2d 999 (5th Cir.1984); *Wyatt v. Penrod Drilling Co.,* 735 F.2d 951 (5th Cir.1984); *Barton v. Zapata Offshore Co.,* 397 F.Supp. 778 (E.D. La.1975); *Petersen v. Chesapeake & Ohio Ry.,* 784 F.2d 732 (6th Cir.1986). If damages are apportioned, the plaintiff could receive prejudgment interest on the unseaworthiness award, but not the Jones Act award. *E.g., Wyatt,* 735 F.2d at 956.[1] We pointed out in *Domangue* that "[u]sually a plaintiff who seeks recovery under the Jones Act and general maritime law for injuries sustained in a single accident has no basis for apportioning his damages between each theory of recovery." 748 F.2d at 1001 n. 1. Only if there is an evidentiary footing for separating the damages caused by unseaworthiness and Jones Act negligence can the jury be asked to do so. *See id.* In this case, there was a single harm from a single cause—the flawed cable. There would have been no realistic basis for apportioning damages; McPhillamy did not ask for apportionment, and even if he had asked for an apportionment, he would not have been entitled to it.

### B. *Directed Verdict*

Perhaps recognizing that we are bound by *Domangue* and *Wyatt,* McPhillamy argues that the trial court erred in not entering a directed verdict on the unseaworthiness claim. If the district court had granted his motion, McPhillamy claims he would have abandoned his Jones Act claim. Then he would have asked the jury to return a finding of damages on the unseaworthiness count, and he would have been eligible to receive prejudgment interest on this award. *See* note 1, *supra.*

[5] McPhillamy's argument fails, however, because the district court did not err in refusing to grant a directed verdict.[2] The standard for whether a directed verdict may be entered on an unseaworthiness claim is enunciated in *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc): "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] is proper." *See also Allen v. Seacoast Products,*

1. The award of prejudgment interest under maritime law is "well-nigh automatic." *Reeled Tubing, Inc. v. M/V CHAD G,* 794 F.2d 1026, 1028 (5th Cir.1986). By contrast, prejudgment interest is not recoverable in Jones Act cases tried to a jury. *E.g., Sanford Bros. Boats, Inc. v. Vidrine,* 412 F.2d 958, 972 (5th Cir.1969); *Barrios v. Louisiana Construction Materials Co.,* 465 F.2d 1157, 1167–68 (5th Cir.1972); *Theriot v. J. Ray McDermott & Co.,* 742 F.2d 877, 883 (5th Cir.1984).

   If the Jones Act claim is tried to the court, "the allowance of prejudgment interest is within the discretion of the trial court." *Williams v. Reading & Bates Drilling Co.,* 750 F.2d 487, 491 (5th Cir.1985). This is also the rule if a Jones Act claim is joined with an unseaworthiness claim and both are tried to the court. *Ceja v. Mike Hooks, Inc.,* 690 F.2d 1191, 1196 (5th Cir. 1982).

2. Thus we need not discuss whether McPhillamy would have been entitled to prejudgment interest on the punitive damages, though it is at the least highly doubtful that he would have been so entitled. *See Illinois Central R.R. v. Texas Eastern Transmission Corp.,* 551 F.2d 943, 944 (5th Cir.1977) (noting that penalties do not draw prejudgment interest); *West v. Harris,* 573

F.2d 873, 883 (5th Cir.1978) (noting that prejudgment interest is not recoverable "when it is not a necessary element of compensation"), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). We also need not resolve whether McPhillamy would have been entitled to a jury determination on damages had he dismissed his Jones Act claim. Unseaworthiness claims sound in admiralty and are therefore not tried to a jury unless plaintiff invokes diversity jurisdiction (McPhillamy did not) or unless they are brought pendent to a federal law claim such as the Jones Act under which plaintiff may request a jury trial (McPhillamy did so request). *See, e.g., Cruz v. Hendy International Co.,* 638 F.2d 719, 723 (5th Cir.1981) (citing cases); *Romero v. Bethlehem Steel Corp.,* 515 F.2d 1249, 1252 (5th Cir.1975); *see generally* Note, *The Jury on the Quarterdeck: The Effect of Pleading Admiralty Jurisdiction When a Proceeding Turns Hybrid,* 63 Tex.L.Rev. 533, 536–38, 545–47 (1984) (discussing the instances in which a jury can hear a maritime claim). In this action, the lone basis for the jury trial was the Jones Act claim; it is curious that McPhillamy assumes he would have been entitled to a jury determination on damages after dismissing the vehicle for securing the jury trial in the first place. He cites no authority for this proposition.

*Inc.*, 623 F.2d 355, 359 (5th Cir.1980) (applying *Boeing* to an unseaworthiness claim and affirming directed verdict for plaintiff). We assume, *arguendo*, that on the facts of this case, the district court would not have erred by directing a verdict for McPhillamy on unseaworthiness. However, Fed.R. Civ.P. 50(b) also provides that when the court denies, or "for any reason" does not grant, a motion for directed verdict, "the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." Thus the rule explicitly contemplates the possibility of reserving decision on the motion until the jury has rendered its verdict.

[6] In reserving judgment here, the district court was following a practice we have described as "highly desirable," *Green v. Reynolds Metals Co.*, 328 F.2d 372, 373 n. 2 (5th Cir.1964), and "salutary," *Western Hills Bowling Center v. Hartford Fire Insurance Co.*, 412 F.2d 563, 565 n. 2 (5th Cir.1969). *See also* C. Wright & A. Miller, 9 *Federal Practice & Procedure (Civil)* § 2533 at 586 (1971) (stating that "[e]ven at the close of all the evidence it may be desirable to refrain from directing a verdict *though it would be possible to do so*") (emphasis added). The primary reason we encourage district courts to reserve judgment on motions for directed verdict is that if the court grants a judgment n.o.v., a retrial is avoided if we reverse the j.n.o.v. because there is a jury verdict that can be reinstated. *Green*, 328 F.2d at 373 n. 2; *Western Hills*, 412 F.2d at 565 n. 2; C. Wright & A. Miller, *supra*, § 2533, at 586; J. Moore & J. Lucas, 5A *Moore's Federal Practice* ¶ 50.05[3] (1986). At least nine other Circuits have endorsed this practice. *Id.* at n. 1 (citing cases). The district court's failure to grant McPhillamy's motion was consistent with this generally salutary practice. Thus, even had its failure been motivated by unnecessary or excessive caution, we will not hold that the court erred.

\* See 812 F.2d 937.

Accordingly, we affirm the district court's refusal to add prejudgment interest to the jury's award.

AFFIRMED.



Norris LIRETTE, Plaintiff-Appellant,

v.

N.L. SPERRY SUN, INC. and Quarles Drilling Company, Defendants-Appellees.

No. 86–3373.

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1987.

Rehearing Granted March 2, 1987.\*

Jones Act action was brought in state court against employer and vessel owner. Vessel owner and employer removed the action to federal court. The United States District Court for the Eastern District of Louisiana, Charles Schwartz, Jr., J., dismissed Jones Act and unseaworthiness claims against employer but reserved any claims against vessel owner under Longshoremen's and Harbor Workers' Compensation Act. The plaintiff appealed. The Court of Appeals, Clark, Chief Judge, held that plaintiff's conduct in participating in action to its conclusion after defendants removed action to federal court could not waive provisions of statute barring removal of Jones Act action from state court.

Vacated and remanded with directions.

Goldberg, Circuit Judge, filed a specially concurring opinion.

Gee, Circuit Judge, filed concurring opinion.